[No. 4153.    Decided April 11, 1902.]

NORRIS SAFE AND LOCK COMPANY, *Appellant,* v. F.
LEWIS CLARK *et al., Respondents.*

PLEADING — DENIAL OF DEBT AND PLEA OF PAYMENT — ELECTION.

Where defendant in an action to recover the price of materials answers by general denial and also that it had paid another party for such materials, it was not error to refuse to compel defendant on motion to elect between its plea of general denial and of payment, since the answer of payment to some one else than plaintiff is an immaterial averment and constitutes no defense.

CONTRACTS — SUFFICIENCY OF EVIDENCE.

The fact that the evidence shows that a contract for furnishing certain materials to defendants was made by another than plaintiff would not be ground for nonsuit, when it also appears that such third party refused to accept the contract but billed and consigned the goods to plaintiff, who paid therefor and furnished same to defendants, who accepted and used the material, paying plaintiff a large part of the contract price therefor.

PLEADING — AMENDMENT AT TRIAL.

In an action by plaintiff to recover upon a contract which he had entered into as agent for another, and had been compelled to carry out himself because of his principal's refusal to furnish the materials under the contract made in its name, it was error to refuse plaintiff's offer to amend his complaint on the trial so as to show an assignment of the contract to him by his former principal.

Appeal from Superior Court, Spokane County.—Hon. GEORGE W. BELT, Judge.    Reversed.

*R. E. Porterfield* and *James Dawson,* for appellant.

*W. J. Thayer,* for respondents.

The opinion of the court was delivered by.

WHITE, J.—The allegations of the complaint in this action in substance are:  The corporate existence of the plaintiff, the corporate existence of the United States

Mortgage Company, and that it has an inferior lien on the real estate mentioned; that F. Lewis Clark and Winnifred Clark at all times mentioned were husband and wife; that they were the owners of certain lots in Spokane, upon which is erected a six story brick building (there is a description of the lots in the complaint); that between the 30th of October, 1900, and the 10th of November, 1900, the appellant, at the special instance and request of defendant F. Lewis Clark, furnished material, consisting of vaults, vault doors, and lockers, and accompaniments for all of the same, to the said Clark, to be used in, and which were actually used in, the erection and completion of said building on said lots; that plaintiff commenced to furnish the same on the 31st of October, 1900, and ceased to furnish the same on the 10th of November, 1900; that said material was of the reasonable value of $4,380, and said sum fell due and became payable from said Clark to the plaintiff. There is an allegation that on or about November 20, 1900, the sum of $3,930 was paid; that there is unpaid the sum of $450. There is an allegation as to the filing of the lien notice for the sum of $4,380, with a credit of $3,930, and the recording of the lien, etc. The prayer is for judgment for $450, with interest from November 10, 1900, against the two Clarks, and an attorney's fee, and for the foreclosure of the lien, etc. The answer denies, on knowledge, information, and belief, the furnishing of the material by the plaintiff, the value thereof, the amount due therefor, the payment to the plaintiff of said $3,930, the delivery of the material to F. Lewis Clark to be used in the building, the use of the same in the building, the filing of the lien notice, and every other allegation of the complaint except the corporate existence of the United States

Mortgage Company and the ownership by the Clarks of the lots and building. After the denials in the answer there is an allegation as follows: "That all of the work and material of the kind mentioned in said complaint were fully paid for to the person furnishing the same long before the commencement of this action." This allegation is denied in the reply. Appellant moved for an order requiring respondents to elect whether they would stand on their general denial or on their plea of payment. The motion was denied by the court, and appellant excepted. We think that this exception is not well taken. The matter treated as a plea of payment could have been stricken from the complaint on motion. It is not a plea of payment, and was immaterial matter. As a general rule, all material facts must be stated in positive and direct terms, and not argumentatively. This requisite is prescribed for the sake of precision, and that the adverse party may be able to traverse the matter alleged directly and distinctly. Gould, Pleading, 69. There is no positive averment in this so-called plea of payment that the defendant paid the plaintiff for the material. The averment is that the persons who furnished the material were fully paid therefor. This was immaterial so far as the plaintiff was concerned, for the defendants had denied that the plaintiff had furnished the material. The mere fact that the defendants had paid some one else for the material is no defense to the suit of the plaintiff for materials furnished by it.

At the close of the plaintiff's case the court granted a non-suit, and upon this the principal errors are assigned. The controversy grows out of the price for certain iron moldings, part of the materials claimed by the plaintiff to be extras, which claim is denied by the defendants.

The evidence upon which this judgment was rendered is, in substance, that on the 11th of August, 1900, the Macneal & Urban Company, a corporation engaged in Ohio in manufacturing materials such as are described in the complaint, entered into a 'contract with F. Lewis Clark to construct, transport, and deliver to said Clark f. o. b. cars at Spokane, for $3,930, the work and material described in certain drawings and specifications attached to an agreement then executed by W. G. Norris, as general agent of the Macneal & Urban Company. The evidence tends to show that after this agreement was executed and closed one Mr. Dow, representing F. Lewis Clark, further agreed as to the molding, and some marking was done on the plans attached to the agreement to show such moldings. The price of the contract in the agreement was not changed, but the evidence explains why this was not done, and that the moldings were to be extra. The testimony as to the value of the moldings was that they were worth from $400 to $450. There is evidence showing that, after the contract was made, the Macneal & Urban Company refused to furnish the materials mentioned in the contract, and that the materials, while the same materials manufactured under the contract, were in fact furnished by the plaintiff in this action, and, so far as the same was paid for by the defendants, the payments were made by the defendants to the plaintiff in this action. William G. Norris, with whom the contract was made in the first instance, on behalf of the Macneal & Urban Company testified, on cross examination, after having testified on direct examination that the plaintiff furnished the material, and the value thereof, as follows:

"Question: Did I understand you to say that F. Lewis Clark ever made a contract with the Norris Safe & Lock Company for the furnishing of this material? Answer:

He certainly paid the Norris Safe & Lock Company. I receipted their bill. Q. Do you mean to say that Mr. Clark ever made a contract with the Norris Safe & Lock Company for the furnishing of this material? A. When you come down to the technical point, may be they didn't make one with the Macneal & Urban Company. Q. Answer my question: Do you mean to say that Mr. Clark ever made a contract with the Norris Safe & Lock Company for the furnishing of this material? A. The contract is there, made with the Macneal & Urban Company, and the Norris Safe & Lock Company carried it out because the Macneal & Urban Company refused to do it."

The witness Norris further testified:

"Q. Who paid the Macneal & Urban Company for these safes? A. I did. Q. When you say 'you,' do you mean you personally? A. Personally, the Norris Safe & Lock Company. Q. The Norris Safe & Lock Company? A. Yes, sir. Q. When? A. On the 6th day of October; the day they were shipped from the factory. They made a sight draft by means of a letter of credit issued by the First National Bank of Seattle. Q. On whom was it made? A. Norris Safe & Lock Company."

The material was shipped, as the evidence shows, on the 6th of October, 1900, and on or about the 15th of October, 1900, arrived in Spokane in the possession of the Norris Safe & Lock Company, the bill of lading therefor being sent to that company. On October 22d the Norris Safe & Lock Company, acting through W. G. Norris, wrote to the respondent Clark as follows:

"Seattle, Oct. 22, 1900.

"F. Lewis Clark, Esq., Spokane, Wash.

Dear Sir:—The Macneal & Urban Co. shipped for you *on our order* on October 6th carload of vault work. On receipt of evidence that shipment was made that date I made a demand on Mr. Dow, your architect, for return of a certificate of deposit for $500.00, said certificate was deposited as a guaranty that the goods would be shipped

on or before that date. I furnished this gentleman with evidence that the car had been shipped on that date and received a letter dated October 13th, which explains itself, copy of which we enclose. I went to Spokane, saw Mr. Dow and made another request for the check. He then doubted that all the goods were in the car and I then obtained from the railroad company a signed statement showing what was in the car, I gave that to Mr. Dow and he insinuated that I wrote it out myself. When I showed him that it was signed by Mr. Hill, agent of the Northern Pacific, he doubted that and said that he (Hill) might be lying about the matter. I then requested him or his representative to go down and look in the car and see that it was all there. I went down and in five minutes checked off everything in the car and found that it was all there. When I was unable to get this money refunded which I was entitled to I included it in the draft for the entire amount. There seems to be some dispute about an extra charge for molding on the lockers. Your agent, Mr. Jones, told me I would have to settle that with Mr. Dow. Mr. Dow refused to talk over the matter, so, of course I was unable to do anything with him; as he has acted not only very arbitrary in this matter, but insulting as well, I do not see how I can come to any understanding with him. In reference to this charge for the molding will state that it is not in the specifications, and I was requested to put it on by Mr. Dow a few hours after the contract was signed for the vault work and *I charged you exactly what the Macneal & Urban Co. charged me.* When I bid on this work I was furnished a blue print which showed absolutely nothing. There were no specifications accompanying it and no one could tell what it meant, so I called on Mr. Dow and asked him for an explanation, and he took me into the vault next to his office and showed me the lockers there and told me 'that was what he wanted,' and I made the specifications up myself to cover the work and put in, as I thought, everything, describing the work in detail, and also included shelf racks which were not shown on his plans. I believe he claims that there

are two or three lines at the top of the locker drawing which represent a molding. If it is there should be a side view showing the molding. The absence of any specifications for this work would have cost you something over $2,000, if I had not gone over and figured on it as you can see by looking at the Mosler Safe Co.'s *first* bid which was afterwards changed and reduced to $3,800 and some odd dollars f. o. b. Factory *after my bid was put in.*

*My reason for making a ten day draft for these goods was because I had to pay for the goods before they were shipped to get them and the First National Bank of this city advanced the money to pay for them and held the bill of lading as their security for this money.* I wanted to be present when the goods were inspected and assist in any way that I could and while in Spokane I went to the trouble of having the car hauled to the freight house, got permission to have them unloaded in the freight house so they could be inspected, but I was unable to get any one to go there and look at them.

I did everything possible for you to get the work out for you on time and to give you a first class job. I even paid extra for night work so there would be no delay, had the railroad Co. rush them through in remarkable quick time and in return for which I have been treated in a very shabby manner by your representative, not only this time but when the contract was signed. I have furnished thirteen steel lined vaults in this city, besides some of the largest work on the coast, any one of which is much larger than this job, and this is the first time I have ever had any trouble, or received such treatment. I can show you that the plan for this work is inaccurate in several respects and in the absence of a specification which should have been furnished by the architect means almost nothing and had there been a molding shown on these lockers I would have included it in my specifications and added a charge for it when I put in my bid. I want to do what is fair in this matter and want everything to be satisfactory but I cannot afford to throw in this extra work as the

night work, which I paid extra for, more than used up all the profit in the job.

> "Yours very truly,
> Norris Safe & Lock Co.   per"

The Macneal & Urban Company had shipped the goods to the appellant, and had received and accepted the pay for them from the appellant, and the appellant had received and hypothecated the bill of lading to the bank at Seattle to raise the money to pay for the goods. From this it is plain that the appellant was consignee of the goods. On October 27, 1900, the following letter was written by F. Lewis Clark to the plaintiff:

"William G. Norris, Esq.,
> Norris Safe & Lock Company,
> Seattle, Wash.,

Dear Sir: Herewith find draft for $500 being return of the amount deposited by you for the guaranty of date of shipment of vault doors, etc., for Empire State Building. We return this $500 upon your statement that the goods were shipped on the date agreed upon. If you will send me an order on the railroad I will pay the freight *for you* and take the goods to the building, and within ten days thereafter will *remit to you* the amount of contract less the freight paid as above, provided the goods are as represented. *Regarding the extra charge, I will be better able to discuss that after the material is unpacked and partially set up.* If you have a valid claim I do not see that you will lose any rights as it will of course depend upon the appearance of the work and the plan, and which can be adjusted when the goods are exposed fully better than at present.

> Yours truly,
> F. Lewis Clark.   W. E. G."

From these letters it is evident that the goods were not shipped to Mr. Clark. There is only one conclusion that can be drawn from this and from the fact that the

money to pay for the goods was raised on the bill of lad-
ing by the appellant, and that is that the material was
billed and shipped to the Norris Safe & Lock Company.
The evidence further shows that on November 17th the
defendants, well knowing all these facts, drew a draft,
through the Exchange National Bank, payable to the order
of F. Lewis Clark, for $3,242.20, on Dexter Horton &
Co., Seattle, and indorsed this draft, "Pay to the order
of the Norris Safe & Lock Company. F. Lewis Clark;"
that this was in payment for the material furnished by the
plaintiff, and sued for in this action.   The respondents,
notwithstanding they first made a contract with the Mac-
neal & Urban Company for the same material, dealt with
the appellant as the owner of the material, and by so doing
received possession thereof.   They cannot now claim that
the appellant did not furnish the material.   The material
was shipped to, purchased and paid for by, the appellant.
Respondents knew this.   After the delivery the respond-
ents paid the appellant all that was paid for the material,
so far as the record discloses, being the greater portion of
the value thereof.   Under the evidence in this case touching
the conduct of the respondents in dealing with the appel-
lant in obtaining a delivery of the goods and in paying for
them in part, there was no necessity for showing an as-
signment to the appellant of the Macneal & Urban con-
tract, and all evidence as to this was immaterial or at least
merely explanatory.   Appellant is suing to recover for
the reasonable value of materials that it had purchased,
paid for, and delivered to the respondents, and which were
received by the respondents from it, knowing that it had
purchased and paid for the same, and that it looked to
them for repayment.   Testimony was introduced as to the
reasonable value of all the material furnished.   We think

the respondents should be allowed to controvert the value of the material furnished.

The judgment of the court below is reversed, with instructions to set aside the judgment of nonsuit, and to allow the defendants to controvert the testimony of the plaintiff as to the value of the material furnished, the court then to enter judgment for the foreclosure of the lien for such sum as may yet be due, not exceeding $450, with interest from November 10, 1900, including a reasonable attorney's fee and costs; the appellant to recover the costs of this appeal.

### On Petition for Rehearing.

Per Curiam.—On consideration of this case on petition for rehearing, we have concluded to modify the opinion filed herein, reported in 68 Pac. 718. It appears from the record that the Macneal & Urban Company assigned its contract to the Norris Safe & Lock Company. The appellant, during the progress of the trial, offered to amend its pleadings so as to show such assignment. The court refused to allow such amendment. We think, under the circumstances of this case, the court erred in refusing to allow the amendment, and this cause is remanded for a new trial, with leave to the appellant to amend its pleadings so as to show an assignment of the contract made by the Macneal & Urban Company with F. Lewis Clark to the Norris Safe & Lock Company. And the respondents are permitted to show any defense or counter-claim to such amended complaint that they may have. The appellant to recover its costs on this appeal and the costs of the suit to abide its final determination.

Reavis, C. J., and Fullerton, Hadley, Mount and Anders, JJ., concur.