[No. 12386.   Department Two.   September 24, 1915.]

EVANGELOS LILIOPOULOS, *Respondent*, v. OREGON-
WASHINGTON RAILROAD & NAVIGATION
COMPANY, *Appellant*.[1]

PLEADING — VARIANCE — MATERIALITY.    A variance between the pleading and proof, in that plaintiff alleged a hiring under a rule and custom of the company entitling him to certain benefits, and proved an oral special contract entitling him to further benefits, is not material unless the adverse party has been actually misled to his prejudice, and will. be deemed amended to conform to the proof, under the express provisions of Rem. & Bal. Code, §§ 299, 300.

TRIAL—INSTRUCTIONS—ISSUES.   Where pleadings should be deemed amended to conform to the proof, the instructions to the jury properly treat the issues as being as broad as the evidence.

MASTER AND SERVANT—MEDICAL ATTENDANCE—TERMS OF CONTRACT —EMPLOYMENT BY AGENT—PRESUMPTIONS.   Where a foreman was authorized to employ and discharge men, presumptively he is authorized to state the terms of the contract entitling one hired by him to medical and hospital services should he become sick or injured; and if the foreman oversteps his authority, any loss caused thereby must fall upon the person whose agent he was.

SAME—HOSPITAL ATTENDANCE—NOTICE OF INJURY—AGENTS. Notice to a foreman of an injury requiring hospital attendance is notice to the company, where the foreman made the contract of hire agreeing to furnish the attendance, was in charge of the force of men of which the injured man formed a part, and was the company's only representative authorized to deal with him; and it is immaterial that the accident happened on a holiday while the men were not engaged in the service of the company.

SAME—HOSPITAL ATTENDANCE—FAILURE TO FURNISH—DAMAGES— QUESTION FOR JURY.   Whether the loss of an employee's arm was due to the defendant's breach of contract to furnish medical services, is a question for the jury, where defendant's failure resulted in failing to secure treatment for four days, necessitating amputation, and there was expert evidence tending to show that his arm would have been saved if it had received surgical attention within a reasonable time.

Appeal from a judgment of the superior court for King county, Albertson, J., entered June 25, 1914, upon the ver-

[1]Reported in 151 Pac. 818.

dict of a jury rendered in favor the plaintiff, in an action on contract.    Affirmed.

*Bogle, Graves, Merritt & Bogle,* for appellant.

*Walter B. Allen* and *C. Liliopoulos,* for respondent.

FULLERTON, J.—In the early part of April, 1913, the appellant railway company employed the respondent to work as a laborer in an extra force or "gang" of men engaged in grading and repairing the appellant's line of railway near Enaville, in the state of Idaho.   The respondent was to receive $1.75 per day for his services, from which there was to be deducted fifty cents per month for the appellant's hospital fund.   The respondent was a Greek, as were the others of the force of men with whom he labored, and as was the foreman who directed his labor and by whom he was employed. April 27, 1913, was known as the Greek Easter, and the laborers celebrated the day by refraining from their ordinary labors.   During the course of the day, certain of the force, particularly the subforeman and the timekeeper, became intoxicated.   The respondent, according to his own testimony and that of certain of his colaborers, did not join in this part of the celebration, but kept closely to the car where he had his sleeping quarters.

After the dinner hour, and between one and one-thirty o'clock, the subforeman, the timekeeper and others came into the car where the respondent was staying, and sought to have him join them in a drinking bout.   The respondent took one glass of beer, and then protested that he was unable to take more.   Whereupon one of the inebriates, either the subforeman or the timekeeper, pulled a pistol and threatened to shoot the respondent if he did not drink.   The respondent sought to take the pistol from the person who possessed it, when it was discharged, the bullet passing through the respondent's left arm above the elbow, severing the main artery, splintering the bone, and severely lacerating and bruising the surrounding tissues.

The appellant had no physician or surgeon at the place of injury, neither was there any other medical practitioner at the place. The respondent's colaborers, however, bound the arm so as to stop the flow of blood, and then sought the foreman and demanded that the respondent be taken to the company's hospital for treatment. Their attention was then called to a rule of the company to the effect that hospital benefits would not be furnished to an employee for injuries incurred in fights and brawls, or from unlawful acts, and were told that the injury received by the respondent was not one for which, because of the rule, the respondent could demand treatment at the company's hospital. Request was then made for the use of a handcar that the employees might remove him to a hospital in a neighboring town some ten or twelve miles distant. This also was refused them, and they were compelled to wait the approach of the passenger train going in the direction of the hospital, which passed the station at six o'clock that evening. The respondent was taken to the hospital on the passenger train at the expense of the colaborers, where he was treated at the expense of himself and his brother; the railway company itself sustaining the claim of its foreman to the effect that the injury was not received in a manner which entitled him to hospital benefits at the company's expense.

During the wait between the time of the injury and the time the respondent received medical attention, the respondent suffered intense pain, and to relieve him, his colaborers loosened the bandages they had first bound upon the arm. This permitted the blood to flow from the wound, the respondent losing, as the witnesses estimated, from three quarts to a gallon of blood. The consequence was that he arrived at the hospital in a very weakened condition. The physician in charge cleansed the wound with antiseptics, dressed it, and then used various stimulants and salt solutions to restore the lost blood. After that was done, the patient was put to bed and left until morning, to ascertain, as the physician testi-

fied, whether there would be a return of circulation to the arm, there being at that time no circulation below the wound. In the morning the arm was found to be still without circulation, and its immediate removal was advised. The respondent refused to have this done until his brother arrived. On the arrival of the brother, he desired a consultation, and another surgeon was called from a neighboring town. By the time the consulting surgeon arrived, four days had elapsed since the occurrence of the injury, the lower arm had become gangrenous, and there was considerable infection above the wound. The arm was at once removed, but owing to the infection it could not be dressed in the usual manner; that is, "it was necessary to pack the wound wide open instead of closing it," requiring a much longer time to heal it than it otherwise would have taken.

This action was brought by the respondent against the appellant as for a breach of contract. In his complaint the respondent alleged that it was "a custom and rule of the defendant company, . . . to charge each common laborer entering its employ the sum of fifty cents per month for hospital and medical attendance in case of accident or sickness befalling such laborers while in its employ;" and that, "the plaintiff, with full knowledge of said rule, custom and practice of said defendant entered said defendant's employ as a common laborer, . . . and that defendant did afterwards charge the plaintiff the sum of fifty cents, by deducting said sum from the wages then due the plaintiff for the preceding month, and said plaintiff paid the same by permitting and allowing said deduction;" further alleging his injury, the failure and refusal of the appellant to furnish him with medical attendance, and that by reason of such failure and refusal, he suffered the loss of his arm, which otherwise could have been saved, suffered an impairment of his physical health, which has not since been regained, and was subjected unnecessarily to great pain and suffering.

The respondent's evidence tended to show that, in making the contract of hire between himself and the railway company, the company acted through the foreman before mentioned; that the foreman told him, in answer to his inquiry concerning wages, that his wages would be one dollar and seventy-five cents per day, from which would be deducted fifty cents per month as hospital fees, which would entitle him to medical and hospital services in the case he should become sick or be injured while in the company's employ. Others of his colaborers, hired at the same time, testified to the same effect.

It is the appellant's first contention that there is a variance between the respondent's allegations and proofs concerning his contract of hire. That, while he alleged a hiring under a rule and custom of the company, entitling him to certain benefits according to such rule and custom, his proofs showed an oral special contract, totally at variance with the contract alleged, and under which he was entitled to benefits for causes which would not so entitle him under the rule and custom of the company. But conceding that the respondent did not prove his cause of action as he alleged it in all of its particulars, we are clear that there was no such material variance between the allegations and the proofs as to entitle the appellant to a reversal. The code provides (Rem. & Bal. Code, § 299; P. C. 81 § 287), that no variance between an allegation in a pleading and the proof shall be deemed material unless it shall have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits; and that, whenever it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the trial court, and in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as may be just. And further (Rem. & Bal. Code, § 300; P. C. 81 § 289), when the variance is not material as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an

immediate amendment without costs.  Under these sections of the statute, we have repeatedly held that it avails a litigant nothing merely to show a variance between his adversary's allegations and proofs, but that he must go further and show in connection therewith a resulting injury; must show that he has been misled to his prejudice in maintaining his action or defense.  *Dudley v. Duval*, 29 Wash. 528, 70 Pac. 68; *Irby v. Phillips*, 40 Wash. 618, 82 Pac. 931; *South Tacoma Fuel & Transfer Co. v. Tacoma R. & Power Co.*, 50 Wash. 686, 97 Pac. 970.

There was no such showing in this instance.  The appellant made no claim in the lower court that it had been misled by its adversary's pleadings to its prejudice.  On the contrary, it proceeded with its defense and the cause was submitted to the jury upon the issues as broadened by the evidence.  Under these circumstances, it cannot in this court avail itself of the objection.

Error is next assigned upon the instructions of the court to the jury.  Owing to the somewhat complicated nature of the case, the instructions of the court were of necessity of considerable length, and, without extensive quotation, it is difficult to make clear the precise point of the objection.  In substance, however, it is contended that the court confused the allegations of the complaint with the evidence of the respondent, and thereby permitted the jury to return a verdict on a cause of action variant from that set forth in the complaint. But, as we have attempted to show in our discussion of the first assignment of error, the court was permitted to treat the issues as being as broad as the evidence.  So treating them, the instructions are not erroneous.  They are, on the contrary, a clear and impartial statement of the actual issues and of the facts necessary to be found by the jury before a verdict would be returned for the respondent.

It is next contended that the foreman, who made the contract of hire with the respondent, was without authority to contract with reference to benefits they were to receive in case

of sickness or injury different from that set forth in the rules of the company. But the evidence makes it clear that he was empowered to take men into the employ of the company and discharge them after they had been so employed. Presumptively, at least, he was empowered to state the terms of the contract of hire to those whom he hired, and if he stated them incorrectly, or even contrary to his instruction, any loss caused thereby must fall upon the person whose agent he was, not upon the person dealing with him as a stranger.

It is argued further in this connection that, since the respondent was not engaged in the service of the company on the day of his injury, he was not under the authority of the foreman, and hence notice of the foreman was not notice to the company, and any lack of attention on the part of the foreman would not bind the company. We cannot think this contention tenable. The foreman was the representative of the company with whom the contract of hire was made. He had charge of the force of men of whom the respondent formed a part. He was the only agent of the company authorized to deal with the respondent which the company had brought to the respondent's notice. He contracted with the respondent on behalf of the company to furnish him with medical and surgical attendance in case he should become sick or be injured during the time he was in the company's employ. Surely it cannot be said under these conditions that his power to represent the company with reference to the contract existed only during the periods of the employment in which the respondent was actually engaged in manual labor in the course of the employment. On the contrary, his power to so represent the company continued during the entire course of the employment, or until such time as the respondent should receive notice from the company that the foreman no longer represented it.

Lastly, it is said, that there was no evidence sufficient to justify the court in submitting to the jury the question

whether the final loss of the arm was due to the breach of the contract on the part of the company to furnish the respondent with medical and surgical services. There was evidence on the part of medical experts tending to show that, had the respondent received surgical attention within a reasonable time after his injury, circulation could have been restored to the arm in such a degree as to have done away with the necessity of amputation. There was evidence also of a contrary view. The weight and sufficiency of the evidence was therefore for the jury, and no error was committed in submitting the question to them.

The judgment is affirmed.

MORRIS, C. J., ELLIS, and MAIN, JJ., concur.