[No. 14094.  Department One.  November 22, 1917.]

VAN DOREN ROOFING & CORNICE COMPANY, *Plaintiff*, v.
GUARDIAN CASUALTY & GUARANTY COMPANY, *Appellant*,
MANHATTAN CONTRACTING COMPANY *et al.*,
*Respondents.*[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—CONTRACTOR'S BONDS—
NOTICE OF CLAIM. Where an informal notice to a municipal corpo-
ration of a balance due for materials furnished a contractor on pub-
lic work was treated as a compliance with Rem. Code, § 1161, re-
quiring a notice of intention to assert a claim against the contractor's
bond, it will be held sufficient, where actual notice of the filing of a
claim was thereupon given to the sureties, who treated it as suf-
ficient and were not misled and in their pleadings in the case ad-
mitted the claim and tendered such amount as might be due thereon.

PLEADING—VARIANCE — DEPARTURE — AMENDMENT TO CONFORM TO
PROOF. In an action by a materialman to recover upon the bond of a
contractor on public works, it is not a fatal variance or departure
for the complaint to allege the furnishing of the supplies to the
general contractor, and for the proof to show, and the court to allow
an amendment alleging that the materials were furnished to a sub-
contractor, and deliveries made on the ground with due notice to
the general contractor, with notice of claim against the bond as re-
quired by statute, there being no claim of surprise or request for a
continuance; the allowance of amendments to conform to proof be-
ing within the discretion of the trial court.

MUNICIPAL CORPORATIONS — IMPROVEMENTS — CONTRACTOR'S BOND—
LIABILITY—MATERIALS FURNISHED SUBCONTRACTOR OR AGENT. In an
action by a materialman to recover upon the bond of a contractor on
public works, findings that a general contractor was liable are sus-
tained, notwithstanding the materials were furnished by one who,
under a written contract, was a subcontractor, where it appears that
credit was extended to the general contractor under an agreement
that it would pay the bill, and the subcontractor was regarded only
as a purchasing agent.

GUARANTY—CONTRACT— CONSTRUCTION — MUNICIPAL IMPROVEMENTS
—CONTRACTOR'S BOND—CLAIM FOR ADVANCE. Where a bank, after
making advances to a contractor upon taking a general assignment
of all the fund over the twenty-five per cent reserve, left the surety
on the contractor's bond a first claim on the reserve if it paid for
labor or materials, a writing showing that the surety waived this

[1] Reported in 168 Pac. 1124.

contingent right to the twenty-five per cent reserve, in considera-
tion of a further loan which the surety requested the bank to make
to the contractor, does not constitute a "guaranty" by the surety for
repayment of the loan.

EVIDENCE—PAROL EVIDENCE TO VARY WRITING. In such a case,
the waiver agreement was not so ambiguous as to admit of parol
evidence of a contemporaneous agreement to guarantee repayment
of the loan, where the writing contained no such guaranty, which
could have been easily expressed; since parol evidence is not ad-
missible to create, but only to explain or remove an ambiguity ap-
parent on the face of the instrument.

GUARANTY—CONTRACT—CONSTRUCTION. In such case, the fact that
the contingency of the surety's taking over the contract and com-
pleting the work never arose, which left the bank without any pro-
tection, as it would otherwise have had to the extent of the twenty-
five per cent reserve, does not warrant the construction that the con-
tract was intended as a guaranty.

Appeal from a judgment of the superior court for King
county, Mackintosh, J., entered November 15, 1916, upon
findings in favor of certain lien claimants, in consolidated
actions to determine conflicting claims to a fund in court and
to foreclose a mechanics' lien, tried to the court. Reversed as
to American Savings Bank & Trust Co.; affirmed in other
respects.

*E. B. Herald* and *Reeves Aylmore, Jr.*, for appellant.

*W. H. Bogle*, *C. B. Graves*, *F. T. Merritt*, and *Lawrence
Bogle*, for respondent Seattle Construction & Dry Dock Com-
pany.

*Thomas T. Littell*, for respondents Dalk & Lindberg.

*Myers & Johnstone*, for respondent Canal Lumber Com-
pany.

*Farrell, Kane & Stratton*, for respondent American Savings
Bank & Trust Company.

ELLIS, C. J.—Defendant Manhattan Contracting Com-
pany, as contractor, erected a transit shed for the port of
Seattle at a contract price of $34,760, of which sum twenty-

five per cent was to be withheld until all claims for labor and material had been satisfied.    To secure payment of such claims, two statutory bonds complying with the provisions of Rem. Code, § 1159 were given, one for $30,000, with the Guardian Casualty & Guaranty Company as surety, the other for $4,760, with Reeves Aylmore, Jr., and A. V. Smith as sureties.    The contract and bonds were executed on December 29, 1915.    During the progress of the work, a number of materialmen's claims were filed with the Port of Seattle.    The validity of some of these being disputed, the Port of Seattle refused to complete payment of the contract price and withheld a balance of $13,853.27, which was more than $5,000 in excess of the twenty-five per cent.    The sum so withheld was finally paid into the registry of the court to await the court's order.    Van Doren Roofing & Cornice Company, a material claimant, brought an action in interpleader to determine the respective rights of the various claimants to this fund.    The Canal Lumber Company brought a separate action to enforce its claims for materials.    These actions were ordered consolidated for the purpose of trial.    By stipulation they were actually tried separately, but are treated as consolidated on this appeal.    A number of other claimants, including Dalk & Lindberg, Seattle Construction & Dry Dock Company, and American Savings Bank & Trust Company were made parties defendant or intervened and cross-complained to establish their respective rights to the fund and against the statutory bonds.    After trial, judgment was entered in favor of various claimants against the contractor and its surety, the Guardian Casualty & Guaranty Company. Both of these defendants gave notice of appeal, but the latter alone has perfected its appeal, and in this court contests only the claims of Dalk & Lindberg, Seattle Construction & Dry Dock Company, Canal Lumber Company, and American Savings Bank & Trust Company.    We shall discuss the errors assigned generally as they apply to the facts connected with the respective claims.

I.   Dalk & Lindberg were awarded judgment against Manhattan Contracting Company and Guardian Casualty & Guaranty Company for materials furnished in the sum of $1,062.20, with interest, and an attorney's fee of $150.   Their notice of claim filed with the Port of Seattle was as follows:

                                          January 5th, 1916.
Port of Seattle, Port Commission,
  Gentlemen:   You are hereby notified that the Manhattan Contracting Co. still owes us $1,062.20 for materials furnished East Water Building Transit Shed on Wharf No. 2.   Wish you would hold out that amount from their contract or make some arrangement to pay our claim.                        Yours truly,
                              (Signed)   Dalk & Lindberg.

Appellants contend that this claim was insufficient, in that it gave no notice of any intention to assert a claim against the statutory bonds, hence did not comply with Rem. Code, § 1161, which prescribes that the notice in such cases shall state that the claimant "has a claim in the sum of ...... dollars ...... against the bond ......"

It is true that this notice is a mere statement of the balance due and a request that the Port of Seattle hold out the amount or make some arrangement to pay it.   It contains no statement of an intention to hold the surety on the bond.   In *Rodgers v. Fidelity & Deposit Co.*, 89 Wash. 316, 154 Pac. 444, cited by appellant, touching a similar notice, we said:

"The sureties upon such bonds have a right to know what claims are being made against them, by timely filing of the required notice.   It is not enough that the claimant makes some claim against the contractor, his debtor, or against the funds which may be due the contractor."

In *Robinson Mfg. Co. v. Bradley*, 71 Wash. 611, 129 Pac. 382, a similar notice was held insufficient.   In the case here, however, appellant received actual notice of the filing of the claim and thereafter treated it as sufficient.   The Port of Seattle at once sent to the contractor and to appellant a written notice as follows:

"There has been this day filed with the Port of Seattle a claim against you and your bondsmen in amount $1,062.20, by Dalk & Lindberg."

But appellant, relying upon the decision in *Robinson Mfg. Co. v. Bradley, supra*, asserts that actual notice cannot take the place of the filing of a notice with the municipality specifically asserting a claim against the bond. In the *Bradley* case, however, the actual notice went no further than the written notice filed with the library board, which was merely notice that the claim was due and unpaid. In the case here, the port commission evidently construed the notice filed with it as a claim against the bond, and so interpreted it in its notice to the contractor and bondsmen. We think that the doctrine in the *Bradley* case should not be extended, especially where, as in this case, the pleading shows that the surety was not misled, but at all times prior to trial treated the notice as a sufficient claim against the bond. The Manhattan Contracting Company and the Guardian Casualty & Guaranty Company, its bondsman, answered the cross-complaint of Dalk & Lindberg, denying generally the paragraph thereof in which was alleged the filing of the claim with the Port of Seattle, and denying specifically that $250 was a reasonable attorney's fee as therein alleged, but these answers further affirmatively averred that the contractor nor its bondsman "has never disputed the claim of said cross-complainant and has never refused to pay the same," and set up, as an excuse for the failure to pay this claim, the fact that other claimants had filed fraudulent claims, because of which the Port of Seattle was withholding money due on the contract. These answers close as follows:

"A tender is hereby made by this defendant to this cross-complainant out of said money in the registry of the court of the amount of its claim."

Dalk & Lindberg demurred to this affirmative matter in each answer, on the ground that it constituted no defense in law. The demurrers were sustained, but the affirmative mat-

ter was not stricken from either of the answers, and though held on demurrer insufficient in law as a defense, it still stood as an admitted fact. Nowhere in appellant's pleading is the sufficiency of the claim specifically assailed. There is a mere denial that the claim was filed. There is no claim, even here, that appellant was misled by the notice given. On the contrary, the admission above quoted shows affirmatively that it was not misled. Notwithstanding this admission, the court permitted full evidence to be taken as to the amount of the claim and as to the character of the claim filed. He concluded, however, that "so long as the bonding company received any notice and was not misled that is sufficient." While the court's statement is somewhat broader than is warranted by our decisions, we are satisfied that it is warranted in the light of the evidence coupled with the admission in the pleading. As to the probative effect of such admissions, see: *City of Arkansas v. Payne*, 80 Kan. 353, 102 Pac. 781, 18 Ann. Cas. 82, and note; *Behrens Lumber Co. v. Lager*, 26 S. D. 160, 128 N. W. 698, Ann. Cas. 1913A 1128, and note; *Oregon R. & Nav. Co. v. Dacres*, 1 Wash. 195, 23 Pac. 415.

In these cases, pleadings were admitted in evidence after they had been superseded by amendment, and such is stated to be the correct rule under overwhelming authority. *A fortiori*, it would seem that, where the pleading was not amended, stricken nor withdrawn, but still stood as part of the record of the case, as here, the admissions contained therein must be considered as admitted facts in the case. We find no warrant in the record for reversing the judgment in favor of Dalk & Lindberg.

II. The appeal from the judgment in favor of Seattle Construction & Dry Dock Company involves an alleged departure in pleading. The dry dock company was made a party defendant, and alleged in its original cross-complaint that:

"It furnished and delivered to the said Manhattan Contracting Company, in pursuance of a contract between them

certain lumber and material . . . for the use and benefit of the contract in said bonds mentioned, yet the said Manhattan Contracting Company has failed and neglected to pay the said sum."

After the dry dock company had submitted evidence tending to support this allegation, appellant introduced in evidence a written contract between the dry dock company and O. W. Crandall, doing business as O. W. Crandall & Company, who, in the alleged capacity of a subcontractor, bought the material from the dry dock company for the use of the Manhattan company. Crandall was not a party to the action. He was, however, a witness and admitted that he had never made any claim against the Manhattan Contracting Company, and that this claimant's bill had not been paid. The court allowed the dry dock company, after it had closed its evidence, to amend its pleadings so as to allege:

"That the said Manhattan Contracting Company has not performed the conditions of the aforesaid bonds in this, to-wit, that this cross-complainant furnished and delivered to O. W. Crandall, a sub-contractor, in pursuance of a contract between them, for the use and benefit of the contract in said bonds mentioned, certain lumber and material of the value of $4,042.72 . . . yet the said Manhattan Contracting Company has failed and neglected to pay the said sum of $4,042.72."

The amended cross-complaint contained further allegations that, at the time of commencing delivery of the materials, written notice was mailed to the Manhattan Contracting Company, as general contractor, advising it of the commencement of such deliveries, and that, within thirty days after completion and acceptance of the work, a notice in writing was filed with the port commissioners setting forth its claim against the bond in the manner required by law.

The evidence which preceded the making of this amendment on the part of the dry dock company showed delivery of materials upon the ground; that the materials had been ordered by telephone, and that it was understood at the time by

respondent's officer in charge of the matter to be on behalf
of the Manhattan Contracting Company; that the materials
were of the value alleged in the cross-complaint, and that the
notice of claim against the bond had been given as required
by law.   The appellant, on its part, proved a written con-
tract of the Manhattan Contracting Company with Crandall
for furnishing all the lumber required on the work.

' When the amendment was allowed, appellant did not claim
surprise.   It declined to take advantage of an offer of the
court to grant a continuance for meeting the issue presented
by the amendment.   Appellant insists that the variance be-
tween the original pleading and the proof went to the "entire
scope and meaning" of the cause of action so as to constitute a
failure of proof under Rem. Code, § 301, which would not
justify an amendment to meet the proof, as permitted by
Rem. Code, §§ 299, 300.   We are unable to agree with this
contention.   The amendment did not change the cause of ac-
tion "in its entire scope and meaning."   The gist of the cause,
set up in both pleadings, was the supplying of lumber for
use on a public contract of the Manhattan Contracting Com-
pany and a claim against the surety on its bond.   The lum-
ber may have been bought for delivery through an inter-
mediary, such as the subcontractor, Crandall, but its ultimate
destination was understood by all parties to be for use under
the Manhattan Contracting Company's bonded contract with
the port district.   The principal contractor has not prose-
cuted its appeal from this judgment.   The only interest its
bondsman can have in this phase of the case is to know that
Crandall has not paid the claim, which is an established fact.
This would protect the bonding company even had the lumber
been delivered directly to Crandall as subcontractor; but the
evidence goes further and shows that the deliveries were
made by this claimant directly to the principal contractor.
We think the variance was not a material one; especially
since there was no showing that it misled the adverse party
to his prejudice.   On the record here, the action of the court

in ordering an amendment to conform with the proofs was fully warranted under the terms of Rem. Code, § 300. The governing principle is amply exemplified by our own decisions. *Wolf v. Hemrich Bros. Brewing Co.*, 28 Wash. 187, 68 Pac. 440; *Hadevis v. Nutting*, 43 Wash. 40, 86 Pac. 197; *Olson v. Snake River Valley R. Co.*, 22 Wash. 139, 60 Pac. 156; *Norris Safe & Lock Co. v. Clark*, 28 Wash. 268, 68 Pac. 718, 70 Pac. 129; *Goupille v. Chaput*, 43 Wash. 702, 86 Pac. 1058; *German American Bank of Seattle v. Wright*, 85 Wash. 460, 148 Pac. 769; *Gilbert v. Morgan Lumber Co.*, 87 Wash. 293, 151 Pac. 785; *Stetson & Post Lumber Co. v. Sloane Co.*, 61 Wash. 180, 112 Pac. 248; *Liliopoulos v. Oregon-Washington R. & Nav. Co.*, 87 Wash. 396, 151 Pac. 818. The allowance of amendments to conform with proof is a matter addressed to the sound discretion of the court in cases of variance not amounting to a departure. We find no abuse of discretion in this case.

III. The Canal Lumber Company was awarded judgment against the Manhattan Company and its surety the Casualty Company in the sum of $4,849.84, with interest, and an attorney's fee of $450. The complaint alleged that the respondent sold and delivered to the Manhattan company, at its special instance and request, certain materials. The court found that the respondent, at the special instance and request of one O. W. Crandall and defendant Manhattan Contracting Company, sold and delivered to the latter company certain materials, and that, before any delivery of the materials so sold, that company agreed with respondent to pay for such materials. The evidence shows that there was a written contract between the Manhattan company and Crandall by which the latter was to furnish all the lumber for the construction of the port transit shed, and that the lumber for which recovery is sought by this claimant was ordered by Crandall from respondent and delivered to the Manhattan company at its request. There was further evidence that

respondent deemed Crandall merely a purchasing agent or broker, and had an express understanding with the Manhattan company, prior to delivery of the lumber, that the latter was the actual purchaser and would pay for it. The president of the Manhattan company admitted that the sum of $530.50 was actually paid to respondent on this account by the Manhattan company, and that he did not make the objection now urged when the demand was made on that company for the balance. In further confirmation of this agreement, the books of respondent show that the lumber was always charged to the Manhattan company and never to Crandall. Crandall had not been paid for the lumber delivered by respondent. It is not denied that the lumber was delivered by respondent directly to the Manhattan Contracting Company and checked and accepted by it. We think it is clear from the evidence that credit was given by respondent, not to Crandall, but to the Manhattan company, and that Crandall was treated by both parties as occupying no other relation in the transaction than that of intermediary or broker, and not as a subcontractor or materialman. Whatever may have been the contract between Crandall and Manhattan company, it seems to us plain from the evidence that respondent never looked to any other party than the Manhattan company for payment, and never extended credit to Crandall, and that the Manhattan company was fully aware of that fact. While the evidence is conflicting as to this agreement, we cannot say that it preponderates against the finding of the trial court to the effect that the lumber for which respondent seeks a recovery was sold to the Manhattan Contracting Company at the special instance and request of itself and Crandall, and that, before delivery, the Manhattan company agreed with respondent to pay for it. The Manhattan Contracting Company, being thus liable for the material, and proper notice to hold its bondsmen having been given, appellant Guardian Casualty & Guaranty Company is also liable upon its bond.

IV.   The American Saving Bank & Trust Company in-
tervened in the Van Doren action and seeks recovery upon
two notes for $4,500 and $2,500, respectively, executed by
the Manhattan Contracting Company, and which it is al-
leged were guaranteed by the Guardian Casualty & Guaranty
Company.   By an instrument executed on March 17, 1916,
the Manhattan company had assigned to intervener all its
rights in its contract with the Port of Seattle as collateral
security for money loaned.   That assignment is as follows:

"For and in consideration of money loaned this day by
the American Savings Bank & Trust Company, of Seattle,
Wash., we, the undersigned, do hereby assign as surety there-
for all of our right, title and interest in and to the attached
contract, said assignment to be and remain as collateral se-
curity for the said loan in the hands of the said American
Savings Bank & Trust Co. until the said loans have been
fully repaid.
"Dated this 17th day of March, A. D. 1916.
          "(Signed) ˙Manhattan Contracting Company,
                    "by F. J. McGraw, Pres'd.
"March 17th. 1916.
 "Accepted and attached to contract in lieu of assignment
filed on the 10th day of January, 1916.
                    "(Signed)   W. W. Castle,
              "Deputy Auditor, King County, Wash."

On May 8, 1916, the bank made a loan of $4,500 to the
Manhattan Contracting Company, taking its demand note
for that amount and, at the same time and as part of the same
transaction, a writing signed by the Guardian Casualty &
Guaranty Company as follows:

                    "Seattle, Wash., May 8th, 1916.
"The American Savings Bank & Trust Company
"Gentlemen:   The Manhattan Contracting Company are
in need of funds to liquidate indebtedness against what is
known as the Spokane Street Two-Story Transit Shed, the
funds resulting from such contract with the Port of Seattle
having been heretofore assigned to you by the Manhattan
Contracting Company.   The Guardian Casualty & Guaranty
Co., being the surety for the Manhattan Contracting Co. to

the Port of Seattle, hereby requests and authorizes you to make a loan of Four Thousand, five hundred ($4,500.00) Dollars to the Manhattan Contracting Co. for the purpose stated, and hereby consents and agrees that you hold the funds which will be paid by the Port of Seattle on account of said contract, and apply such funds to the payment of the loan hereby authorized, hereby waiving any right which the Guardian Casualty & Guaranty Co. may have on said funds, should the said company as surety be called upon to perform and complete the contract under the terms of its bonds.

"(Signed)   Guardian Casualty & Guaranty Co.
"by Reeves Aylmore, Jr., its Attorney in Fact."

On May 25, 1916, the bank made a further loan of $2,500, taking a note from the Manhattan company for that amount and a writing of like tenor as before from the casualty company. It is admitted that the proceeds of these loans were disbursed in the progress of the work on checks of the Manhattan company countersigned by the representative of the casualty company. The court gave judgment against appellant casualty company for the full amount of these notes, with interest and attorney's fee.

Appellant contends that the court erred in construing these instruments as guaranties, and in admitting oral testimony to enlarge them.

Lest the real issue be confused and the discussion wander, it must be borne in mind that the bank is not suing the casualty company as bondsman of the contractor, but solely as guarantor of the notes. The bank filed with the Port of Seattle no claim against the bond. Neither does the bank make any claim on the fund in court as against labor and material claimants. It did not file its assignment with the Port of Seattle, and at the trial it expressly disclaimed any right to that fund as against such claimants. It is obvious, therefore, that neither of the questions involved in *Puget Sound State Bank v. Gallucci*, 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767, nor in *Dowling v. Seattle*, 22 Wash. 592, 61 Pac. 709, as construed and followed in *Northwestern*

*National Bank of Bellingham v. Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 Pac. 473, is directly involved in this case. Here the sole question is, Did the casualty company guarantee the payment of the notes?

Over appellant's objection that respondent was seeking to vary a written contract by parol testimony, the vice president and manager of respondent bank was permitted to testify as to conversations had by him with the president of the Manhattan Contracting Company and the representative of the Guardian Casualty & Guaranty Company, just before or at the time the loans were made. He did not attempt to detail the conversations, but stated his conclusions as to their purport:

"That the surety company was guaranteeing the payment of the money loaned and we were loaning it to the surety company rather than to the Manhattan Contracting Company."

He also testified that the bank made a prior loan of $5,000 to the Manhattan Contracting Company, and on January 10, 1916, took an assignment of that company's rights under the contract with the Port of Seattle as collateral to that specific loan; that the $5,000 loan was also guaranteed by the casualty company and was paid prior to the making of the loans here involved. It is clear, however, that his statement as to the guaranty was his own conclusion, as the writing was not offered in evidence and the payment was made, not by the casualty company, but, as he testified, from "estimates made on the job." Over the same objection, the president of the Manhattan Contracting Company testified in the same general way to the effect that it was understood the casualty company was guaranteeing payment. On cross-examination, he stated that "the principal points" of the agreement were incorporated in the written documents, but "there was a great deal of conversation other than what appears in the documents, prior and leading up to them." It may be remarked in passing that, if a guaranty of payment had been intended, it was preeminently the principal point. Yet it was

not mentioned.   Both of .these witnesses testified that the agent and attorney for the casualty company stated that his company would not contest the bank's claim against it.

The agent and attorney for appellant testified:

"When the Manhattan Contracting Company discovered they were in financial trouble they went to their bank for assistance and the bank told them they could not give them any assistance unless the surety company would waive any of its rights it had on the fund, and the Manhattan Contracting Company came to my office and took me to Mr. Gleason's office and in each case where a loan was made—in those two particular instances drew their own agreement and I signed it and the conversations we had were prior in each instance and I have taken the position that those agreements should not be referred to, and I never stated I consented a judgment should be taken against the surety company in these two instances.   In another case there may be a different arrangement, and I explained to him the difference.   These two instruments he drew himself and I signed them.   Q. And there was no other guaranty?   A. Absolutely none.   Q. Except as couched in those instruments?   A. Absolutely none."

On cross-examination he testified:

"Q. Mr. Aylmore, you know that the waiving of the bonding company's claim to the fund would be no security to the bank?   A. I explained that to Mr. Gleason when it was made.   Q. I am not asking you that question.   A. I knew it. He asked for that sort of an agreement and I signed it.   In fact, I prepared another form, but he didn't want it and prepared his own.   Q. You know the lien claims under the statute would be prior to any fund that would be left on deposit so far as the bank was concerned.   A. The surety company would have a prior lien as against the bank."

The foregoing is the substance of the parol testimony, and even conceding its admissibility, it seems to us far from convincing that the written instruments do not embody the full agreement of the parties.   But, after a most careful consideration of the written documents, we are satisfied that they were neither so ambiguous nor incomplete as to admit of parol evidence, either to explain or enlarge them.   There

was ample scope for their full operation without either proving or implying a guaranty of payment. The bank, under
its general assignment from the contractor, might have made
itself a preferred claimant as to all of the fund over and
above the twenty-five per cent which was to be retained for
the protection of labor and material claimants, and incidentally for the protection of the surety if called upon under its
bond to pay any such labor or material claims or to complete
the contract. As to this twenty-five per cent, the bank had
no claim under its general assignment. As to that reserve,
the surety company would still have the first claim if called
upon to pay for labor or material or to complete the work.
*Dowling v. Seattle,* 22 Wash. 592, 61 Pac. 709; *Maryland
Casualty Co. v. Washington Nat. Bank,* 92 Wash. 497, 159
Pac. 689; *Northwestern Nat. Bank of Bellingham v. Guardian Casualty & Guaranty Co, supra; Title Guaranty & Surety
Co. v. First National Bank of Hoquiam,* 94 Wash. 55, 162
Pac. 23. Since this has been the settled law in this state
since the decision in the *Dowling* case in 1900, the parties
here must be presumed to have known it. The writing shows
on its face that it was to waive this contingent right to this
twenty-five per cent that the writing was given. The request and authorization to make the loan are clearly recited
only as an inducement and consideration for this waiver.
When read in the light of the declared law, the contract is
complete on its face and unambiguous. The request to make
the loan, being recited in the same sentence with the waiver
and as its inducement, can raise no implication that it was
intended also as a guaranty of payment. Such a guaranty,
had it been intended, could have been expressed by inserting
the three words "guarantee its payment" after the word
"hereby," and the recital as to waiver would then have been
unnecessary and wholly useless.

It is true, as argued by respondent, that an act may be
done by one person at the request of another under such circumstances that the law will imply a promise to pay therefor.

6 R. C. L. § 82, page 674. But this is never so where the request is made upon a specific promise to do something else than pay, as, in this case, to waive a contingent right to a fund. The very expression of the one promise precludes any ground for implication of the other.

The rule is universal that the written contract itself must be resorted to as the source of authority for receiving parol evidence. Parol evidence is never admissible to create an ambiguity, but only to explain or remove an ambiguity apparent on the face of the instrument, or to identify a subject-matter otherwise uncertain. Where the written contract shows a deliberate agreement, complete in itself and formally executed, parol evidence to enlarge its scope or vary its terms is never admissible. *Allen v. Farmers & Merchants Bank of Wenatchee,* 76 Wash. 51, 135 Pac. 621; *Gordon v. Parke & Lacey Machinery Co.,* 10 Wash. 18, 38 Pac. 755; *Newell v. Lamping,* 45 Wash. 304, 88 Pac. 195; *Anderson v. Mitchell,* 51 Wash. 265, 98 Pac. 751; *Smith Sand & Gravel Co. v. Corbin,* 81 Wash. 494, 142 Pac. 1163. An agreement cannot be called incomplete or ambiguous merely because it does not stipulate concerning every possible contingency which might arise touching its subject-matter. It is sufficient as a complete contract if it stipulates fully and definitely concerning the things which on its face it contemplates. *Allen v. Farmers & Merchants Bank of Wenatchee,* and *Smith Sand & Gravel Co. v. Corbin, supra.* These principles are elementary and fundamental, else every contract, whether written or not, would ultimately rest in parol.

We find no merit in respondent's contention that, unless this contract be construed as a guaranty, it offered no protection to the bank. That is true as the matter turned out, but it would not have been true had the contingency contemplated on the face of the instrument ever arisen. Had the bondsman been compelled to take over the contract and perform it, paying all laborers and materialmen, this agreement would have afforded the bank full protection to the ex-

tent of twenty-five per cent of the contract price, just as it recites. The fact that the contingency contemplated by the writing never arose cannot extend the contract to a contingency never contemplated on the face of the writing. The liability of the casualty company must be measured by the breadth of its undertaking, not by the eventuality. We are constrained to hold that the writing is complete and unambiguous on its face and was never intended as a guaranty. Parol evidence of antecedent or contemporaneous conversations was not admissible to enlarge its scope.

The decree is reversed as to the judgment in favor of the American Savings Bank & Trust Company. In other respects it is affirmed.

CHADWICK, MAIN, MORRIS, and WEBSTER, JJ., concur.