[No. 14702.  Department Two.  August 3, 1918.]

UNITED STATES FIDELITY & GUARANTY COMPANY,
*Respondent*, v. AMERICAN SAVINGS BANK &
TRUST COMPANY, *Appellant*, F. W.
McDONALD *et al., Respondents.*[1]

GUARANTY—CONTRACTOR'S BOND—LOAN TO CONTRACTOR — CONSENT
OF SURETY—LIABILITY.  A letter from a contractor's surety consent-
ing to an assignment of bonds, to be held "as collateral security
only for a loan" to the contractor, is not a guaranty of payment of
the loan on failure of the security through default of the principal.

MUNICIPAL  CORPORATIONS — PUBLIC  IMPROVEMENTS — CONTRACT.
Where contractors for a street fill did not make part of the fill,
which was done by a street railway company as required by its
franchise, they are not entitled to pay therefor, under a contract
which provided that the city engineer or board of public works shall
have the right to eliminate any of the items called for in the con-
tract, and such changes shall not constitute a claim for loss of an-
ticipated profits.

Appeal from a judgment of the superior court for
King county, Gilliam, J., entered October 22, 1917,
upon findings in favor of the defendant guaranty com-
pany, in an action on contract, tried to the court.
Affirmed.

*Farrell, Kane & Stratton,* for appellant.

*Hugh M. Caldwell* and *Robert H. Evans,* for respond-
ent City of Seattle.

*McClure & McClure,* for respondent United States
Fidelity & Guaranty Company.

MOUNT, J.—In October, 1915, the city of Seattle let
a contract to the defendants, McDonald & Jones, for the
improvement of Twenty-fourth avenue south, and
other streets in the city.  This contract was the usual

[1]Reported in 174 Pac. 6.

local improvement form contract, providing for the payment, upon the city engineer's estimates, of seventy per cent of the amount earned as the work progressed and the retention of thirty per cent of the contract price until payment of all claims and charges incurred in performing the work. The United States Fidelity & Guaranty Company became the surety on this contract, executing a bond in the full sum of the contract price, conditioned upon the faithful performance of the work by the contractors. Both the contract and the bond were filed in the office of the auditor of King county. Thereafter, McDonald & Jones began the improvement and continued until the work was fully performed and accepted. While the work was in progress, McDonald & Jones borrowed money from the American Savings Bank & Trust Company. Before the money was loaned, the bank required McDonald & Jones to get the consent of the surety company for assignment to the bank of bonds issued against the improvement district as security for the repayment of the money. McDonald & Jones thereupon secured the consent of the surety company in the form of a letter which was written by the manager of the company to the American Savings Bank & Trust Company, as follows, omitting the date and letter-head:

"Gentlemen: We have been requested by Messrs. McDonald & Jones to give our consent to the assignment to you of bonds of the face value of six thousand ten and 00-100ths dollars ($6,010) due them on estimates in connection with their contract for the improvement of Twenty-fourth avenue south, et al., by grading etc. We, therefore, hereby give our consent to such assignment of said bonds to an amount not exceeding six thousand ten and 00-100ths dollars ($6,010) face value, said bonds to be held by you as collateral security only for a loan of six thousand ten and 00-100ths dollars ($6,010) to be made by you to

said McDonald & Jones, said assignment and this consent to be effective when said loan is actually made."

Thereupon the bank loaned the money and took an assignment of the bonds. Some $2,000 was collected upon the bonds by the American Savings Bank & Trust Company, and the balance thereof was required to pay claims for material and labor filed against the contractors. It is now claimed by the appellant that this letter was a guaranty of the payment of the money loaned. The trial court concluded that this letter was not a guaranty of the $6,010 loaned by the American Savings Bank & Trust Company to McDonald & Jones, and for that reason refused a judgment against the surety company in favor of the American Savings Bank & Trust Company for the balance due upon the note given by McDonald & Jones.

The appellant argues that the court erred because this letter was in effect a guaranty for the payment of the note. It is apparent, we think, from a reading of the letter itself, that there was no intention on the part of the surety company to guarantee the payment of the note for $6,010 executed by McDonald & Jones in favor of the bank and trust company, for, after reciting that McDonald & Jones had requested the consent for the assignment of the bonds, the letter says:

"We, therefore, hereby give our consent to such assignment of said bonds to an amount not exceeding six thousand ten and 00-100ths dollars ($6,010) face value, said bonds to be held by you as collateral security only for a loan of six thousand ten and 00-100ths dollars ($6,010) . . ."

It seems too plain for serious discussion that this is simply a consent for the assignment of the bonds to be held as security, and in no respect is it a guaranty that the note would be paid by McDonald & Jones. This same question was presented in *Van Doren Roofing &*

*Cornice Co. v. Guardian Casualty & Guaranty Co.,* 99
Wash. 68, 168 Pac. 1124, and we there held that a let-
ter, in substance the same as the one before us, was not
a contract of guaranty, saying:

"The request to make the loan, being recited in the
same sentence with the waiver and as its inducement,
can raise no implication that it was intended also as a
guaranty of payment. Such a guaranty, had it been
intended, could have been expressed by inserting the
three words 'guarantee its payment' after the word
'hereby,' and the recital as to waiver would then have
been unnecessary and wholly useless."

We also, in that same case, held that oral evidence
was not admissible to prove an intention not expressed
in the writing. It is clear, therefore, that this letter
was not a guaranty of the payment of the note; and
the surety company was therefore not bound to pay
the note upon default of the principal.

It is next argued that the court erred in refusing to
allow the contractors, McDonald & Jones, the sum of
$974.95 for 2,635 yards of fill. When the contract was
let, the specifications for the work provided, among
other things:

"The contract to be awarded under these specifica-
tions will not include the improvement of any portion
of the above district occupied by virtue of any rail-
road, street railway or other grant or franchise requir-
ing improvement or maintenance by the holder of such
grant or franchise of the portion so occupied."

It appears that the Seattle, Renton & Southern Rail-
way Company occupied a portion of Twenty-fourth
avenue South, by virtue of a franchise, for street rail-
way purposes. The part occupied was an eighteen-
foot strip. The franchise of the street railway com-
pany obligated that company to fill the portion of the
street covered by the franchise. At the time the con-
tract for the improvement of the street was awarded

to McDonald & Jones, the city demanded that the street railway company fill that portion of the street occupied under the franchise in advance of the work of filling the remainder by McDonald & Jones. In making this fill, the street railway company permitted the slopes to extend beyond the boundaries of the eighteen-foot right-of-way and into that portion of the street to be filled by the contractors. The city engineer's office estimated the fill thus placed by the railway company at 2,635 yards. McDonald & Jones contend that they are entitled to pay for this work done by the railway company. The board of public works refused to allow the contractors for the yardage put in by the street railway company, and it is now claimed that the trial court should have allowed to McDonald & Jones $974.95 for this work. The contract provides, at section 5:

"That the city engineer or board of public works shall have the right to diminish, increase or eliminate any of the items given in the approximate list of quantities furnished by the city engineer either before or after the commencement of the work, and such changes shall not constitute a claim for loss of anticipated profits."

The fill was made by the street railway company. The contractors, McDonald & Jones, did not make this part of the fill. Under this provision of the contract, the board of public works clearly had the right to eliminate from the contract to McDonald & Jones the work done by the railway company.

These are the only two points discussed by appellant, and we are satisfied that the trial court correctly found upon both points.

The judgment is therefore affirmed.

MAIN, C. J., HOLCOMB, MACKINTOSH, and CHADWICK, JJ., concur.