## CITY BANK FARMERS TRUST CO. v. McGOWAN, Collector of Internal Revenue.

### No. 131.

District Court, W. D. New York.

Feb. 25, 1942.

Montgomery, Grace & Derby of New York City (Hines, Rearick, Dorr & Hammond, John K. Watson, Paul Smith, James Lloyd Derby and J. Seymour Montgomery, Jr., all of New York City, and Moot, Sprague, Marcy & Gulick, and Welles V. Moot, all of Buffalo, N. Y., of counsel), for plaintiff.

Dean, King, Smith & Taylor, of New York City, Amicus Curiae; Frederick P. King, of New York City, of Counsel.

George L. Grobe, U. S. Atty., and Robert M. Hitchcock, Asst. U. S. Atty., both of Buffalo, N. Y., for defendant.

KNIGHT, District Judge.

This is an action by the plaintiff as administrator of the estate of Helen Hall Vail, deceased, to recover $466,912.27 from the defendant as Collector of Internal Revenue for the Twenty-eighth Collection District, New York. Plaintiff, under protest, paid the aforementioned amount, which included interest, on account of the federal estate tax liability in respect to the estate of Helen Hall Vail, deceased, under Section 302(c) of the Revenue Act of 1926, as amended, 26 U.S.C.A.Int.Rev.Code, § 811 (c). Plaintiff filed a claim for refund, which was rejected by the Commissioner of Internal Revenue, and thereafter this action was commenced to recover sums paid as aforesaid.

The deceased was duly adjudged to be an incompetent person by the Supreme Court of the State of New York in August, 1926, and plaintiff was appointed committee of her property. Thereafter a daughter, MaBelle H. Plumb, petitioned the New York Supreme Court for allowances for herself and others out of the surplus income of the incompetent. By order of the Court, January 14, 1927, the committee was directed to make annual payments of $50,000 to the incompetent's daughter and $50,000 to the guardian of three infant grandchildren and smaller amounts to collaterals of the incompetent, out of the incompetent's income. The order included a finding of fact that the incompetent would have made such allowances if she had been in possession of her mental faculties. By later order, June 3, 1932, the Court directed the committee to increase the amounts to be paid to the incompetent's daughter and the guardian of three infant grandchildren to the extent of $25,000 per annum and made these increased allowances retroactive to the extent of five and one-fourth years. This order, like the earlier order, was based on a finding that the incompetent would have made such allowances if she had been possessed of her mental faculties. Pursuant to these orders there were paid out of the surplus income of the incompetent to the persons therein named allowances aggregating the sum of $1,377,866.67.

The Committee of the property of the incompetent, in 1933, filed an intermediate account for the period from August 12, 1926, the date of its appointment, to July 1, 1933, which embraced and reflected all payments made during this period pursuant to the orders of the Court. Thereafter an order was made and entered which approved, ratified and confirmed all the payments made by the Committee, as set forth in its account.

The incompetent, Helen Hall Vail, died on December 27, 1935, and thereafter the Committee rendered a final account that embraced and reflected all payments made by the Committee for the period July 1, 1933, to December 27, 1935, which was confirmed, ratified and approved by a final judgment of the New York Supreme Court.

There were two sets of objections interposed by the defendant to the introduction of certain evidence on the trial upon which the Court then reserved decision. The first set of objections was to the reception in evidence of certain exhibits of records of the Surrogate's Court of Orleans County purporting to show the fixation of a transfer tax by the State of New York, and also the proceeding upon the intermediate and final accounting of the Committee of the incompetent in the Supreme Court in New York State. The objections are sustained and the evidence given relative thereto excluded upon the ground that the evidence is immaterial. The sense in which it is immaterial hereinafter appears.

The second set of objections relates to the admission of the deposition of Mr. Justice Lydon. While counsel for the plaintiff argues that such testimony is admissible, counsel for the Harris children, appearing amicus curiae, contends that such testimony is inadmissible. There is no claim that the orders of the Supreme Court of the State of New York are in any way ambiguous, and the only purpose of the introduc-

tion of the depositions of Justice Lydon is to prove that in the 1927 proceeding the Court had no intent to make a testamentary transfer in contemplation of death. Mr. Justice Ingraham is deceased, so any claim as to his motive in granting allowances must be found in the records of his court. In my opinion the deposition of Justice Lydon is incompetent for any purpose. In so far as the proceedings looking to the payment of the money out of the estate are concerned, the records thereof are the best evidence. There is no claim made of any ambiguity in the records.

"The rule under discussion is stringently enforced to forbid the admission of any parol or extrinsic evidence to contradict, impeach, vary, or explain judicial records, especially where the right of third persons acquired under a judgment would be affected. * * * It also precludes the admission of evidence showing the grounds of a judgment, order, or decree, or to show that the grounds on which a judgment was apparently based did not exist, or that a verdict was improper." Corpus Juris, Section 1388, Vol. 22, p. 1077.

The following cases are also in point on the specific question presented: Matter of Flagler, 248 N.Y. 415, 162 N.E. 471, 59 A.L.R. 649; Agan v. Hey, 30 Hun., N.Y., 591; Blue Mountain Iron & Steel Co. v. Portner, 4 Cir., 131 F. 57; Lyon v. Perin & Gaff Mfg. Co., 125 U.S. 698, 8 S.Ct. 1024, 31 L.Ed. 839; Doyle-Kidd Dry Goods Co. v. Sadler-Lusk Trading Co., D.C., 206 F. 813.

This action arises over the interpretation of Section 302 of the Revenue Act of 1926, as amended by Section 803(a) of the Revenue Act of 1932; now Section 811(c) of Internal Revenue Code. So far as material, its provisions are as follows:

"§ 811. Gross estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

*  *  *  *  *

"(c) Transfers in contemplation of, or taking effect at death. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter; *  *  *."

█ One contention made by the plaintiff is that the statute is to be construed literally and, since Mrs. Vail was an incompetent, there could not have been made any transfer in contemplation of death. Such contention is controverted both by the defendant and counsel for the Harris heirs. It is without merit. The issue is whether the transfers were in contemplation of death within the scope and meaning of the law, and the determination here is to be found in the proceedings had leading to the deduction from the estate of the incompetent. Any question in this regard is answered in the decision of City Bank Farmers Trust Co. v. Hoey, Collector, etc., D.C., 23 F.Supp. 831, 833, affirmed, 2 Cir., 101 F.2d 9, 10, relative to the transfers here in question. In the District Court decision, Judge Patterson said: "Such payments have the status of gifts made by the incompetent acting through the court," and Judge Chase on the appeal said: "It is clear, as the parties agree, that the transfers * * * were gifts."

█ There can be no question that the Supreme Court under its broad powers can make allowances out of the surplus income of an incompetent "upon the theory that the lunatic would, in all probability, have made such payments if he had been of sound mind." Matter of Lord, 227 N.Y. 145, 124 N.E. 727, 728; In re Andrews, 192 N.Y. 514, 85 N.E. 699; Matter of Flagler, 248 N.Y. 415, 162 N.E. 471, 59 A.L.R. 649; Pomeroy, Equity Jurisprudence, Vol. 1, 4th Ed. (1918), § 384, n. It has not the power to make a will for the incompetent or to say what disposition should be made of the property after

death. Ex parte Whitebread, 2 Mer. 99, 35 Eng.Rep. 878 (1816); Matter of Salisbury, 1818, 3 Johns.Ch., N.Y., 347; Lewis v. Jones, 50 Barb., N.Y., 645; and Section 1383, New York Civil Practice Act. Further, undoubtedly the judgment and decrees of the court are presumed to be within the jurisdiction and power of the court. Voorhees v. Jackson ex dem. Bank of U. S., 10 Pet. 449, 9 L.Ed. 490; Freeman on Judgments, 5th Ed., p. 831, § 387, and it is not likely that the court would be "party to a scheme to enable a private company to avoid federal taxation." But all this seems beside the point. A finding by the state court that Mrs. Vail would have made a gift of the amounts herein shown does not preclude a finding in this court that those gifts were made in contemplation of death. The rule is stated in Commissioner v. Greene, 9 Cir., 119 F.2d 383, 385, that "State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law," and further, "Since local law is not controlling, it is immaterial what local statutes said, or local courts held."

■ The purpose of Congress in enacting the taxing statute was to prevent tax evasion. The dominant purpose is to reach substitutes for testamentary dispositions and to prevent evasion of the tax. United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 451, 75 L.Ed. 867. Obviously without such statutes transfers in any amount could be made at any time and a tax upon succession of interest evaded.

■ ■ The test of whether or not a donative transfer inter vivos was in contemplation of death, within the meaning of the Revenue Act, is the motive. The differentiation between gifts made in contemplation of death and those not so made "must be found in the transferor's motive." United States v. Wells, supra. Determination that the transfer is in contemplation of death is not dependent on finding that the transferor then entertains thought of death but rather whether the transfer was made in anticipation of succession. United States v. Wells, supra.

■ Motive means not only purpose but means the measure of the purpose. "It must be a particular concern, giving rise to a definite motive." United States v. Wells, supra. Motive here must be found from the record of the proceedings in the State Courts. The Committee through the action of the court could only do that which it may reasonably be said the incompetent if competent would have done.

Mrs. Vail was adjudicated to be incompetent and a Committee of her property appointed on August 12, 1926. On November 12, 1926, or just two months thereafter, the first application for allowances was made to the Supreme Court. The annual income of the incompetent for four or five years preceding the adjudication of incompetency had averaged $318,000. In 1917 Mrs. Vail gave each of her two daughters a valuable home, and for some years prior to 1926 had made Mrs. Plumb and Mrs. Harris an annual allowance of $6,000. In 1917 she also gave Mrs. Plumb an additional $5,000. Otherwise there was no variance in the allowance to Mrs. Plumb. She never made an allowance for the benefit of the Harris children or to the collateral heirs. In January, 1927, the first order of the Supreme Court was made directing the payment of $50,000 out of the incompetent's income annually to Mrs. Plumb; to the general guardian of the Harris children $50,000, and to each of five collateral heirs $2,000. On June 3, 1932, the annual allowance to Mrs. Plumb and the guardian of the Harris children was increased to $75,000, and the increase of $25,000 was made retroactive for a period of 5 and ¼ years. During those five years the average annual income of the incompetent was approximately $450,000. While it appears that the father of the Harris children had a gross annual income of approximately $200,000, the Referee who passed on the first petition recommended, that the allowance for them be given "to be applied by him—'general guardian' toward their support and maintenance." There is nothing to show the income of Mrs. Plumb's husband, but it does appear that she had an annual income of $150 from some other estate. There is evidence that Mrs. Vail had made an allowance to a sister, Mrs. Ferris, of approximately $500 annually and given some money and gifts to others of the collaterals at irregular intervals and in varying amounts. Neither petition contains any recital of any need on the part of either Mrs. Plumb or the Harris children.

■ ■ "Need" is not a necessary element of the motive to be attributed to the incompetent. Neither is age such element. However, both may be taken into consideration in determining motive. Specially should need be considered here where it is

urged that these allowances were made in order that the beneficiaries could have greater advantages. Concededly the burden rests upon the plaintiff to establish that these gifts were donative and not made in anticipation of the natural succession to the decedent's property or in contemplation of death.

It seems to me that plaintiff has not borne the burden placed upon it; that the evidence does not warrant the conclusion that the incompetent, if competent, would have made these allowances.

Among others, there are these outstanding facts:

(1) When adjudicated incompetent Mrs. Vail was 71 years of age. She was suffering from an incurable ailment.

(2) Mrs. Vail was adjudged incompetent August 12, 1926. Less than two months after such adjudication, to wit, on October 8, 1926, the first petition of Mrs. Plumb for the fixation of allowances was verified.

(3) Allowances of Mrs. Vail to her daughters had never exceeded $6,000 per year to each. In 1912 she gave each $1,500; in 1913, $3,000; and since 1914, $6,000 annually. At one time she did give Mrs. Plumb $5,000 in addition and to each of her two daughters a residence of considerable value.

(4) While the record does not disclose the amount of the estate of Mrs. Vail in 1912, it is clear that it was a large amount, and it had been accumulating from 1897, when her husband died. Yet, as appears, until 1914, the allowances to the daughters did not exceed $3,000 annually to each.

(5) For the five years preceding the adjudication the average annual income from the trust was $318,000, yet during that time the allowance to each daughter did not exceed $6,000.

(6) Since the adjudication the incompetent's income has increased on the average annually not to exceed 25 percent over what it averaged five years preceding adjudication, yet the allowances to the daughters were jumped from $6,000 to $50,000, or 800 percent.

(7) There is no proof that any allowances were ever made to the collateral heirs, save to Mrs. Ferris to whom an allowance of $500 annually appears to have been paid. Attention is called to the fact that proof of this allowance and proof of gifts to other collaterals is purported to be made by letters written by relatives of the collaterals to Mrs. Plumb after the adjudication herein was made. Clearly the letters were not competent evidence.

(8) Neither the petition of 1926 nor that of 1932 shows any need on the part of any of the direct or collateral heirs.

(9) The Referee in the 1926 proceeding recommended an allowance of $50,000 to the general guardian of the Harris children to be applied by him to their "maintenance and support." Yet the father of these children had a gross income of $200,000. It is admitted that this allowance for them was not needed.

(10) The records of the proceedings in 1926 and 1932 clearly show purpose to equalize allowances to direct heirs so that each eventually would share equally in the estate of the incompetent.

(11) The increase in the allowance in 1932 can be supported on no theory save that it was a gift in anticipation of succession to the estate.

(12) The retroactive allowances aggregating $250,000 can be justified as a donative gift on no plausible theory or reason. The making of these allowances did exactly what one of the attorneys in the proceedings then said that he feared might be the result if a flat increase of $250,000 were made. He said: "It seems to me to be the idea of distributing part of the incompetent's estate in anticipation more or less of her death." Whether this $250,000 was split into five payments or whether it was paid as single payment as of the date of order, obviously is of no consequence.

(13) A substantial part of this estate was withdrawn by these allowances. The amount, as heretofore stated, was $1,377,-866.67.

(14) The records of both proceedings speak of sums to be obtained as "allowances", and they contain the stipulation of Mrs. Plumb that the ultimate amount she should receive from the estate of the incompetent should not exceed that to be paid the general guardian on account of the Harris children; and these allowances in this connection are spoken of as "advancements." The characterization of such as "advancements" is not conclusive as to motive, but it is important in connection with other factors.

(15) The theory of counsel for the interested parties is expressed in the record before the Referee "that by granting these allowances to the children and grandchildren

will be simply giving them what they will eventually get in the end," and "where it is impossible for her (incompetent) to use it by reason of the misfortune of her mental and physical condition, that then this court can make an advancement, and in this case it is proper it should do so." The ideas as above stated are expressed in various comments made by counsel for Mrs. Plumb and for the general guardian.

(16) In the 1932 proceedings Mrs. Plumb testified that $50,000 allowance per year was not sufficient to maintain herself and son and to send him to college. It is a rather extraordinary statement, but, assuming it to be true, it is no proof that Mrs. Vail would have increased an allowance of $6,000 to $75,000 at one time. The allowance fixed in 1932, retroactive as of 1926, in effect increases by 1200 percent the allowance last made by Mrs. Vail to each of the direct heirs.

In City Bank Farmers Trust Co. v. Hoey, supra, no question was raised as regards these gifts being made in contemplation of death. Naturally it would not have been. The court could not then properly have considered any question of intent or motive. The gift tax and the estate tax are "not mutually exclusive in all cases." Hesslein v. Hoey, 2 Cir., 91 F.2d 954, 956.

As I have examined the numerous cases cited by the plaintiff and the attorney for the guardian of the Harris children as amicus curiae, I find none that present comparable facts. There are so many cases on what constitutes gift made in contemplation of death within the statute, but it would be quite unusual to find two presenting facts which are comparable.

If I had the authority to change the allowances as made by the orders of the state court to the direct heirs by reducing them below $75,000 but exceeding $6,000 in some amount, I would be disposed to do so. I do not believe that I have the authority to do so.

## Conclusions of Law.

I find and decide that:

1. All sums of money paid to MaBelle Houghton Plumb and Ieuan Harris, general guardian of John H. Harris, William H. Harris and David F. Harris, minor grandchildren of the aforesaid incompetent, and Edward Hageman Hall, Mary Hall Taft, Elizabeth Hall Burdick, Abee Ferrin and Lucy Hall Ferris, by the Committee of the property of Helen Hall Vail, and purported to be paid pursuant to an order granted by Hon. Richard P. Lydon, Justice of the Supreme Court of the State of New York, on January 14, 1927, were payments made in contemplation of death and succession to the estate of said incompetent, save and except the sum of $6,000 paid annually since 1926 to MaBelle Houghton Plumb and Ieuan Harris, as general guardian of John H. Harris, William H. Harris and David F. Harris, grandchildren of the incompetent, and the sum of $500 paid to Lucy Hall Ferris.

2. All sums of money paid to MaBelle Houghton Plumb and Ieuan Harris, general guardian of John H. Harris, William H. Harris and David F. Harris, minor grandchildren of the aforesaid incompetent, and Edward Hageman Hall, Mary Hall Taft, Elizabeth Hall Burdick, Abee Ferrin and Lucy Hall Ferris by the Committee of the property of Helen Hall Vail, and purported to be made pursuant to an order granted June 3, 1932, by Hon. Felix Ingraham, Justice of the Supreme Court of the State of New York, were payments made in contemplation of death and succession to the estate of said incompetent, save and except the sum of $6,000 paid annually to MaBelle Houghton Plumb and Ieuan Harris, as general guardian of John H. Harris, William H. Harris and David F. Harris, grandchildren of the incompetent, and the sum of $500 paid to Lucy Hall Ferris.

The payments aforesaid in the amounts of $6,000 and $500 aforesaid were motivated by the same motive which would have lead the incompetent, Helen Hall Vail, to make payments in these amounts to these respective parties.

3. Plaintiff is entitled to recover the amount of the tax fixed by law as a tax upon the estate of the deceased, computed on $12,500 per year for each year commencing with 1926 and continuing to December 27, 1935, with interest.

4. The plaintiff is entitled to no recovery herein, except as aforesaid.

If desired, the parties hereto may submit to the court findings, which upon adoption will be made a part of this opinion.