[No. 34891. *En Banc.* April 14, 1960.]

MARION T. SMITH, *Respondent*, v. VISTON R. SMITH, *Appellant.*[1]

[1]Reported in 351 P. (2d) 142.

*Rummens, Griffin, Short & Cressman*, for appellant.

*Helsell, Paul, Fetterman, Todd & Hokanson* and *Richard W. Bartke*, for respondent.

HUNTER, J.—The plaintiff wife obtained a divorce from the defendant on October 18, 1950. The property settlement agreement of the parties approved by the trial court was set forth, in part, in the divorce decree and provided as follows:

"1. The wife shall have as her sole and separate property the following:

"(a) The home of the parties hereto located at 925-35th Ave., Seattle, King County, Washington, legally described as:

" 'East 10 feet of Lots eight (8) and nine (9), and all of lots eleven (11) and twelve (12), block three (3), Washington Heights, an Addition to the City of Seattle, according to plat thereof recorded in Volume 3 of plats, page 110, records of King County, Washington; and, Lot three (3), block one (1), Randell's Addition to Seattle, according to plat thereof recorded in Volume 3 of plats, page 60, records of King County, Washington.'

"provided that if the wife shall at any time sell the said

home, the wife hereby agrees that the husband shall be entitled to receive from all the net proceeds derived from the sale of the said home in excess of $6,500.00, the sum of $1,000.00 or ⅓ of said net proceeds in excess of $6,500.00, whichever of said sums is the lesser."

On February 24, 1958, the plaintiff sold the above described property for the sum of ten thousand five hundred dollars, making no payment to the defendant. The defendant filed a motion for an order requiring the plaintiff to show cause why she should not account for proceeds from the sale of the house and pay the sum of one thousand dollars to the defendant, in pursuance of the above provision in the divorce decree. The show cause order was issued. The case was submitted upon affidavits only.

It is admitted that at the time of the divorce the property was subject to a mortgage with a balance due thereon of $6,332.27, although no reference was made to the mortgage in the property settlement agreement or the divorce decree.

It is the defendant's contention that the purpose of the sixty-five hundred dollar payment to the plaintiff was to reimburse her for the mortgage she assumed on the property she received; that when the property was sold the sixty-five hundred dollar payment, plus expenses of sale, was to be deducted to arrive at net proceeds; that to deduct the sixty-five hundred dollars and also the mortgage, plus expenses of sale, would under no circumstances result in any net proceeds remaining, since the fair market value of the property at the time of the divorce was only eleven thousand dollars. Plaintiff denied there were any net proceeds.

The trial court found:

" . . . that the term 'net proceeds' as referred to in paragraph 1(a) of the Final Decree of Divorce herein means net proceeds remaining after payment of all expenses of sale and the mortgage as the same existed at the time of the entry of said Final Decree of Divorce, . . ."

The trial court concluded that there should be deducted from the sale price of ten thousand five hundred dollars, the mortgage as it existed at the time of the divorce, plus expenses of sale. This would then leave net proceeds, from

which sixty-five hundred dollars should be deducted for the plaintiff wife, thereby exceeding the sale price and leaving no other proceeds of the sale. An order was thereupon entered dismissing the order to show cause from which the defendant appeals.

The sole question to be answered is: What is the meaning of the term "net proceeds" as used in the divorce decree? Respondent argues that the term "net proceeds" has a well-established meaning and in this context means a sum of money received by a seller after the deduction of all obligations, which must be discharged before the transaction can be closed. A review of the authorities cited supports this contention. See *Daly v. Crawford,* 279 Mass. 262, 181 N. E. 396, 398 (1932); and Webster's New International Dictionary (2d ed.), p. 1643 (1954).

However, the property settlement agreement must be considered in the light of all the circumstances surrounding its execution, where there is an ambiguity. The ambiguity in the instant case is raised by the admission of the parties of the existence of a mortgage and balance due thereon in the amount of $6,332.27, whereas no mention is made of a mortgage in the property settlement agreement or the divorce decree; and by it further appearing the real estate in question has been treated by the court in its division of the property as an asset of the community free and clear of encumbrances. The failure of any mention of the mortgage in the property settlement agreement and divorce decree, supports the contention of the appellant that the $6,500 payment to the wife was in lieu of the balance due against the property by virtue of the existing mortgage.

The appellant correctly states the rule of construction that, where one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the interpretation which makes it a rational and probable agreement must be adopted. *Ball v. Stokely Foods, Inc.,* 37 Wn. (2d) 79, 221 P. (2d) 832 (1950). Applying the above rule of construction to the property settlement agreement as implemented by

the divorce decree, it is at once clear that the respondent's construction leads to an unreasonable and irrational result. The market value of the property was eleven thousand dollars at the time of the divorce. After paying off the mortgage balance of $6,332.27, which existed at the time of the divorce, and paying sixty-five hundred dollars to the respondent, the value of the property would be exceeded by $1,832.27, plus the costs of sale. For the appellant to enter into such an agreement, expecting to participate in the net proceeds of the sale of the property under such an interpretation, would be a useless act and would lead to an unreasonable and irrational result. The appellant's construction is reasonable and consistent with the language of the agreement, when considered under the circumstances surrounding its execution. The trial court erred in its construction to the contrary.

The respondent argues that it was the intention of the court to make provision for the support of the children in adjusting the property rights; that it was necessary for loans to be made against the property for the children's support to the extent that the respondent realized nothing whatsoever from the proceeds of the sale.

Undoubtedly, the trial court did have in mind to provide a home for the children in awarding the home to the mother. However, in the event of a sale, there were conditions attached whereby the appellant received a vested interest in the proceeds. This was a disposition of the community property. The rights of the parties thereto became final upon the entry of the decree, there being no appeal taken therefrom. *Millheisler v. Millheisler*, 43 Wn. (2d) 282, 261 P. (2d) 69 (1953). This interest of the appellant could not be appropriated by the respondent for child support. If the changed conditions asserted by the respondent require an increase in the support money payments, her remedy would be by an application to the trial court for a modification of the divorce decree.

On the basis of the above interpretation of the proviso in the divorce decree, as to the meaning of "net proceeds," and from an examination of the record, the following would be

a correct accounting of the proceeds of the sale by the respondent:

| | | |
|---|---:|---:|
| Gross Sale Price | | $10,500.00 |
| Expenses of Sale: | | |
| Real Estate Commission | $525.00 | |
| Title Insurance | 55.00 | |
| Excise Tax | 105.00 | |
| Revenue Stamps | 8.40 | |
| Real Estate Tax Proration | 19.70 | 713.10 |
| Net Sale Price | | $ 9,786.90 |
| Less Payment to Respondent | | 6,500.00 |
| Net Proceeds in Excess of $6,500.00 | | $ 3,286.90 |
| One-third of the excess of Net Proceeds, or $1,000.00, whichever is the lesser | | |
| Amount due the appellant | | $ 1,000.00 |

The dismissal of the order to show cause is reversed, and the case is remanded with directions that the trial court enter an order requiring the respondent to account to the appellant in the manner as above determined.

It is so ordered.

WEAVER, C. J., MALLERY, HILL, DONWORTH, and ROSELLINI, JJ., concur.

OTT, J. (dissenting)—The property rights here in controversy were adjudicated in the divorce decree. The questioned provision of the decree reads as follows:

" . . . provided that if the wife shall at any time sell the said home, the wife hereby agrees that the husband shall be entitled to receive from all the net proceeds derived from the sale of the said home in excess of $6,500.00, the sum of $1,000.00 or 1/3 of said net proceeds in excess of $6,500.00, whichever of said sums is the lesser."

The quoted provision is not ambiguous. The term "net proceeds" means the amount realized by the wife from the sale of the property, after deducting the amount of the mortgage and expenses of sale.

The majority do not hold that the decree is ambiguous *on its face*, but state that an ambiguity arises by virtue of the admission of the parties that there was a mortgage of

record at the time the decree was entered. The majority infer that the residence property was treated by the court as a community asset, free and clear of encumbrances, because the mortgage was not specifically mentioned in the settlement agreement or the decree. Such an inference ignores § 9 of the property settlement agreement, *infra*, and gives a limited meaning to the term "net proceeds."

A court cannot read into a writing an ambiguity where none exists. *Crofton v. Bargreen*, 53 Wn. (2d) 243, 332 P. (2d) 1081 (1958). The majority resort to extrinsic evidence (furnished eight years after the decree became final) to create an ambiguity. The use of extrinsic evidence to create an ambiguity in a writing is contrary to the settled law of this state. In *Washintgon Fish & Oyster Co. v. G. P. Halferty & Co.*, 44 Wn. (2d) 646, 658, 269 P. (2d) 806 (1954), we said:

". . . We said in *Van Doren Roofing & Cornice Co. v. Guardian Cas. & Guaranty Co.*, 99 Wash. 68, 168 Pac. 1124:

" 'The rule is universal that the written contract itself must be resorted to as the source of authority for receiving parol evidence. Parol evidence is never admissible to create an ambiguity, but only to explain or remove an ambiguity apparent on the face of the instrument, or to identify a subject-matter otherwise uncertain.'

"It is the function of the court to examine a contract to determine whether it is either so ambiguous or incomplete as to admit of parol evidence to ascertain the intent of the parties."

See, also, *Schwieger v. Harry W. Robbins & Co.*, 48 Wn. (2d) 22, 290 P. (2d) 984 (1955); *Nichols v. Doak*, 48 Wash. 457, 93 Pac. 919 (1908).

Further, in construing a decree, resort may not be had to evidence of the understanding or intention of the parties to the agreement upon which the decree was based. *Chappell v. Chappell*, 45 Wash. 652, 89 Pac. 166 (1907); *City Bank Farmers Trust Co. v. McGowan*, 43 F. Supp. 790 (1942). See *Hanley v. Most*, 9 Wn. (2d) 474, 115 P. (2d) 951 (1941); 1 Freeman on Judgments (5th ed) 132, § 76.

Applying the settled law of this state to the facts pre-

sented by this appeal, extrinsic evidence cannot be considered to establish an ambiguity in a decree which is unambiguous on its face. If it can be said that the decree is ambiguous, I am in accord with the majority that the rule of construction is

" . . . that, where one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the interpretation which makes it a rational and probable agreement must be adopted."

I do not agree that the construction placed upon the decree by the appellant is more reasonable than the construction urged by the respondent. To the contrary, respondent's construction is, in my opinion, the more reasonable one.

The record shows that, at the time of the divorce, the community's only asset of substance was the equity in the home. The husband's earnings were nominal. They had three infant children to support, Dale Z., three years and eleven months of age, and Volney T. and Viston R., Jr., twins, two years and ten months of age. The wife was awarded the custody of the children and the duty to maintain a home and provide food, clothing, education, and medical needs for these infants until they reached the age of majority. The husband agreed to contribute one hundred fifty dollars a month toward the cost of maintaining the home and child support. By the terms of § 9 of the agreement, this contribution could never be increased, even in the event of a changed condition.

It was evident that, because of the infancy of the children, the wife had a full-time job caring for them and, therefore, could not supplement the husband's support contributions by seeking employment. The amount of one hundred fifty dollars a month was not sufficient to provide the food, clothing, and medical attention for herself and three children, pay the monthly heat, light, water, and telephone bills, pay the taxes, insurance, and upkeep on the home, and, finally pay the interest (thirty dollars a month) and the installments on the mortgage.

The property settlement anticipated that, in order for her to supply the mere necessities of life for herself and the children, she could increase the mortgage on the home and thus obtain additional funds to provide these necessities. The amount of this fixed additional allowance for support was limited to sixty-five hundred dollars, and, if more was received, the husband would share in the excess. By this agreement, the husband was assured that his monthly support payments over a period of eighteen years would never be increased, and that responsibility for supplying the deficit for the support of his three children until they reached the age of majority was entirely that of his wife.

Further, the home did not sell for the additional sum. The wife was able to realize only $3,286.90 more than the mortgage and costs of sale. The record shows that this sum was entirely used to supplement the support payments for the children in the seven years and four months preceding this action, and that the wife, in fact, realized nothing for herself. Assuming, however, that $3,286.90 was actually received and available, it represented returns from the sale of community property, of which amount the wife would normally be entitled to one half; therefore, the husband's additional contribution, in fact, amounted to only $1,643.45 for eighteen years of support and care for his three sons. However, the majority require the wife to pay to the husband one thousand dollars from the proceeds of the sale which will make his added contribution for the support of his three sons until they reach the age of majority only $643.45. By the terms of the agreement, the payment of the deficit for the support of the children for the next ten years will be made by the wife alone.

The respondent's construction of the decree, when read in the light of these realities, was most generous and reasonable as it related to the appellant.

The appellant, in effect, is simply seeking to modify the decree of divorce as it relates to the property settlement. The decree was entered in 1950. This action was com-

menced in 1958. A petition to modify or vacate a decree must be brought within one year after the entry thereof. RCW 4.72.010, 4.72.020, 4.72.030. As an action to modify the decree, it is not timely.

Finally, the net proceeds amounted to $3,286.90, which amount was less than sixty-five hundred dollars, and, by the terms of the decree the husband is entitled to nothing therefrom.

The judgment should be affirmed.

FINLEY and FOSTER, JJ., concur with OTT, J.

[1]Reported in 351 P. (2d) 117.