[No. 37839. Department Two. April 14, 1966.]

Gordon H. Dickson et al., Appellants, v. William A. Hausman et al., Respondents.*

*Bogle, Bogle & Gates* and *Don Paul Badgley*, for appellants.

*Nickell, Quinn & Tuai* and *George T. Nickell*, for respondents.

Langenbach, J.†—Dickson commenced this action to enforce a contract requiring Hausman to purchase Dickson's shares of stock in their business upon the latter's claimed retirement. The court entered judgment for respondent, finding that Dickson did not retire within the terms of the contract. Dickson has appealed. (Their wives are nominal parties.)

Respondent owned and conducted a customs brokerage

*Reported in 413 P.2d 378.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

business in Seattle for years. He sought a younger man in a proprietary capacity, as an eventual partner or successor in his business. In 1955, appellant was 28 years of age and respondent was 58 years. After a conference, appellant agreed to enter the business, as he was also a licensed customs broker. A short time later, two agreements were executed concerning their specific business relationships. The respondent incorporated his business and, by 1962, appellant was to receive 49 per cent of the capital stock (or 49 shares) at the rate of $100 a share, which he was permitted to purchase on a monthly payment plan. Respondent retained the remaining 51 per cent of the stock.

Early in 1962, after appellant had acquired his 49 per cent of the stock, further discussions arose between them about the terms of their 1955 agreements. After some conferences between them and with counsel, it was mutually agreed to draft an entirely new contract. A rough copy of it was given to each for inspection and consultation with counsel. On April 10, 1962, the new contract was executed by the parties and their wives.

The pertinent parts of this contract are:

3. Death, permanent disability or retirement of . . . [appellant or respondent] shall constitute and is hereafter referred to as "an activating event."

. . . .

5. Upon the happening of an activating event, all stock of the corporation now held . . . by such withdrawing stockholder and/or his wife, shall be sold to the surviving stockholder upon the terms and conditions . . . [as therein specified].

The contract also provided for the valuation of the shares of stock from time to time. It was last valued (before suit) at $500 a share.

Early in 1963, apparent differences arose between the parties. On February 16, 1963, appellant came to the company office to meet with respondent. In the course of the discussion, appellant tendered to respondent a written statement that, as of the previous day, he was retiring from the company under this contract and demanded payment

for the value of his stock as therein stipulated. In this letter, he also resigned as officer and director of this company, as well as its affiliated companies. This resignation was later accepted and he was removed from such capacities in the companies. Six weeks later, appellant entered the contracting business.

Upon the refusal to make payment for the stock as demanded, this action was instituted. At the trial, appellant's theory was that the word "retirement," as used in the contract, meant withdrawing from this particular business. Respondent, on the other hand, contended that the word "retirement" meant withdrawing from the active business world. The trial court, upon viewing all surrounding circumstances, made findings of fact and conclusions of law supporting respondent's theory.

On appeal, appellant made four assignments of error to conclusions of law. No error was assigned to findings of fact; consequently, they are accepted as verities. *Martin v. Clinton,* 67 Wn.2d 608, 408 P.2d 895 (1966); and *Bignold v. King Cy.,* 65 Wn.2d 817, 399 P.2d 611 (1965). See, Rule on Appeal 43, RCW vol. 0.

The assignments of error to the conclusions of law raised a single issue: whether the word "retirement" as used in the contract had as a matter of law the unambiguous meaning of withdrawing from this particular business. We think not.

> In ascertaining the intention of the parties to a written instrument, the courts must look to the wording of the instrument itself as made by the parties, view it as a whole, and consider all of the circumstances surrounding the transaction together with the interpretation of the instrument by the parties themselves as indicated by their subsequent acts. [Citing case.] *Clements v. Olsen,* 46 Wn.2d 445, 449, 282 P.2d 266 (1955).

*Accord, In re Garrity's Estate,* 22 Wn.2d 391, 156 P.2d 217 (1945), and *Burch v. Rice,* 37 Wn.2d 185, 222 P.2d 847 (1950).

The primary factor to be considered in determining the

meaning of a written contract is the *intention of the parties*, and that intention normally is to be ascertained largely from the language employed by them. [Citing case.]

Where the terms of a contract taken as a whole are plain and unambiguous, the meaning of the contract is to be deduced from its language alone, and it is unnecessary for a court to resort to any aids to construction. [Citing cases.] But where the language of a contract is ambiguous or susceptible of more than one meaning, it is the duty of the court to search out the intent of the parties by viewing the contract as a whole and considering all of the circumstances surrounding the transaction, including the subject-matter and the subsequent acts of the parties. [Citing cases.] *Boeing Airplane Co., v. Firemen's Fund Indem. Co.*, 44 Wn.2d 488, 496, 268 P.2d 654, 45 A.L.R.2d 984 (1954).

It is a well-established rule that, where one construction would make a contract unreasonable or such as prudent men would not ordinarily enter into, while another, equally consistent with the language, would make it reasonable, fair, and just, the interpretation which makes it a rational and probable agreement must be adopted. [Citing cases.] *Ball v. Stokely Foods, Inc.*, 37 Wn.2d 79, 83, 221 P.2d 832 (1950).

Appellant cited many definitions and cases bearing upon some phase of the meaning of "retirement." Likewise, respondent has set forth a host of meanings for this word. Most of the meanings hinge upon the context and connotation in which the word is being used, in its universe of discourse. Such examples are: retire from an office; retire from the Navy; retire by reason of age; retire from business activities. In most instances of "retirement," the element of the passage of an interval of time seems necessarily implied; some degree of permanence, not merely a temporary interlude—such as was presented here when the interval was less than 1 year after the date of the contract.

The terms "death" and "permanent disability" are self-explanatory, while "retirement" is not so definitive. The lawyer who drafted the contract tried to get some definite statement concerning its meaning. Respondent testified:

The lawyer asked, "Retirement from business or retirement?" I said, "Retirement." . . . Mr. Dickson had no objection. . . . I said, "I'm getting along in years and I will gradually taper off." . . . Mr. Dickson said I had treated him right and he had no objection whatever. He said, "It is mutually understood between us; you are getting along in years and naturally you are going to be the first to retire and I understand. I don't see any reason or necessity for defining the term, the word."

The record showed the following:

Q. When was he [appellant] entitled to retire, specifically? A. [By respondent]. Specifically, he was entitled to retire when he had reached an age where he wanted to become—where his efficiency was less, was lowered, where he had put in a number of years and he had finished his business career. Q. Would you point out that qualification in the agreement? THE COURT: That is not in there. That is for me to determine.

The court said it did not believe the appellant during his examination and further stated it did not believe the manner in which appellant indicated he was going to retire. In its oral opinion, the court said the appellant did not retire, within the terms of this contract, but quit or resigned because of dissatisfaction with the manner in which the affairs of the company were conducted. He had every right to do this, but was not entitled to payment for 49 per cent stock interest.

■ The court had the right to believe either party and chose to believe respondent, so far as the term "retirement" was concerned.

[W]here one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the interpretation which makes it a rational and probable agreement must be adopted. *Ball v. Stokely Foods, Inc.*, 37 Wn.(2d) 79, 221 P. (2d) 832 (1950). *Smith v. Smith*, 56 Wn.2d 1, 4, 351 P.2d 142 (1960).

■ Certainly it was not reasonable or logical to conclude that this contract provided that appellant could withdraw, resign or retire from the company within less than 1 year and thus compel the respondent to pay $500 a share for

stock which had been purchased less than a year prior for $100 a share. Consequently, the trial court was justified in determining the meaning of "retirement" in the light of all the surrounding facts and circumstances, and the intention of the parties, expressed at the time of the execution of this contract.

Even from the definitions of "retirement" advanced by appellant, its meaning varied with the circumstances in which it was involved. Thus it is patent that an ambiguity permeated the final interpretation of its meaning in this contract. When the lawyer suggested that "retirement" be set at a definite age or otherwise defined in the contract, neither party desired to state a specific age or time of retirement. The court was obliged judicially to construe some reasonable interpretation into this term in the light of the surrounding circumstances and the apparent intention of the parties. This interpretation resulted in the meaning of "retirement" as "leaving active work or service in the business world after a substantial number of years spent in the business." The parties did not intend it to mean resignation, quitting or withdrawal from the business at any time and manner.

The findings of fact which are not disputed or questioned amply substantiate the conclusions of law which are legally sufficient to support the judgment pronounced. Since the appellant did not "retire" from this company within the terms of the contract, the judgment of the trial court is affirmed.

ROSELLINI, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.