[No. 131-3.    Division Three.    December 29, 1970.]

INVESTMENT SYNDICATES, INC., *Respondent*, v. CLINTON C. CLARK *et al.*, *Appellants.*

*Robert M. Brown* (of *Brown & Thayer*), for appellants.

*Richard W. Pierson* (of *Monheimer, Schermer, Van Fredenberg & Smith*), for respondent.

GREEN, J.—Plaintiff, Investment Syndicates, Inc., brought an action against defendants, Clinton C. and Julia A. Clark, for specific performance of an earnest money receipt and agreement covering the sale of approximately 2,500 acres of real estate in Pend Oreille County. From a decree granting specific performance, defendants appeal.

In response to an ad in the Washington Farmer, Mrs. Clark wrote a letter to Scofield Co., an affiliate of plaintiff,

stating she and her husband were interested in selling their property. Upon receipt of Mrs. .Clark's letter in April 1967, John D. Ross and Chris Turlis, of Scofield Co., agents for plaintiff, traveled across the state to discuss the matter. Later, they returned and after further discussion and negotiation an earnest money receipt and agreement was signed on June 14, 1967. On the following day, June 15, 1967, defendants' counsel by letter notified plaintiff they had decided not to sell the property. On June 19, 1967, another counsel for defendants wrote a letter to plaintiff in essence affirming the prior letter and specifically rescinding the agreement.

Meanwhile, on June 15, 1967, Mr. Ross wrote a letter to defendants, enclosing a true copy of the earnest money receipt and agreement stating it had been placed with the Guardian Escrow Co. in Tacoma with instructions to proceed under its terms and conditions. Mr. Ross testified that earnest money in the form of a note for $1,000 due on closing was also deposited with Guardian Escrow. Preliminary title insurance was sent to Guardian Escrow on July 14, 1967. On October 24, 1967, Guardian Escrow wrote defendants enclosing a real estate contract for their signature, together with a seller's closing statement. The letter stated upon return of the signed contract Guardian Escrow would obtain the signature of plaintiff and close the transaction. When defendants refused to execute the real estate contract, plaintiff sued for specific performance which was granted.

■ First, defendants contend the agreement is not enforceable because of the following language hand-printed on the margin of the agreement: "Subject to formation of group for this purchase." It is argued since this was a condition entirely within the control of plaintiff, defendants had no remedy or right to enforce the purchase against the plaintiff. By reason thereof, defendants assert there was no mutuality of obligation and specific performance should not have been granted in favor of plaintiff. We disagree. Even if it be conceded defendants could not have required spe-

cific performance prior to this action, thus limiting them to recovery on the $1,000 note, when plaintiff brought this action the contract became mutually binding upon the parties and was subject to specific performance. *Tombari v. Griepp*, 55 Wn.2d 771, 350 P.2d 452 (1960). Defendants' contention is without merit.

█ It is also contended the agreement was illusory and unenforceable because of the condition, citing *Spooner v. Reserve Life Ins. Co.*, 47 Wn.2d 454, 287 P.2d 735 (1955); *Brown v. Brew*, 99 Wash. 560, 169 P. 992 (1918); *Winslow v. Mell*, 48 Wn.2d 581, 295 P.2d 319 (1956). We disagree. Mr. Ross, the only witness produced by either party, testified without objection, as follows:

Q. What does that mean, "Subject to formation of group for this purchase."

A. Subject to getting the financing to buy the property, the people.

. . .

Q. Was that discussed, was that talked about with the Clarks?

A. Definitely, yes.

This testimony was undisputed. It seems clear both parties knew of the condition prior to signing the agreement. Defendants' attorney reviewed the agreement before it was signed by Mrs. Clark. The agreement provided for closing within 120 days after the preliminary title report was issued and in no event later than 180 days after June 14, 1967. The contract was timely sent to defendants for signature. There is no evidence the contract did not conform to the earnest money receipt and agreement, nor that the transaction would not have been timely closed but for the refusal of defendants. It is undisputed in the testimony that plaintiff was at all times ready, willing and able to conclude the purchase. Agreements conditioned upon the securing of financing are subject to specific performance. 5 A.L.R.2d 287 (1948). The condition of the instant agreement is definite as to time because it must occur prior to the time specified for closing, *i.e.*, in no event later than 180

days from June 14, 1967. The cases relied upon by defendants are distinguishable.

■■ Second, defendants contend the agreement lacked consideration because the earnest money agreement recited receipt of $1,000 in the form of a note "due on closing." We disagree. The note was payable at a definite time, namely, on closing. The closing date was no later than 180 days after June 14, 1967. The undisputed testimony of Mr. Ross was that if the transaction did not close, disposition of the note would have been in the discretion of defendants, the same as if cash funds had been paid to the real estate agent. Defendants urge us to interpret "due on closing" to mean due "only in the event of" closing. It is the rule that where one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the interpretation which makes it a rational and probable agreement must be adopted. *Dickson v. Hausman,* 68 Wn.2d 368, 372, 413 P.2d 378 (1966). It seems apparent if the note was to have any effect as earnest money, the parties must have intended it to be due and payable on the date fixed for closing regardless of whether the sale was ever closed. We adopt this interpretation as the rational and probable agreement of the parties.

Judgment affirmed.

EVANS, C. J., and MUNSON, J., concur.