COMPAGNIE DES BAUXITES DE
GUINEE, a corporation, Plaintiff,

v.

INSURANCE COMPANY OF NORTH
AMERICA, Defendant.

Civ. A. No. 75–1228.

United States District Court,
W.D. Pennsylvania,
Civil Division.

Jan. 13, 1983.

Cloyd Mellott, Robert Doty, Andrew Roman, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for plaintiff.

Randall J. McConnell, Jr., Stephen R. Mlinac, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant.

OPINION

SIMMONS, District Judge.

I.

Plaintiff, Compagnie Des Bauxites De Guinee ("CBG") instituted this diversity ac-

tion under a business interruption insurance policy for losses allegedly sustained as a result of an accident occurring March 26, 1974, when the boom of an item of equipment known as "Bucket Wheel No. 3" failed and collapsed, resulting in extensive damage to Bucket Wheel No. 3. Plaintiff CBG owns and operates a mining and processing plant for bauxite ore located in the Republic of Guinea, West Africa. Bucket Wheel No. 3 is a large item of equipment which is used to reclaim dried bauxite stored in the Dried Ore Storage Building, located at Plaintiff CBG's bauxite processing and shiploading facilities in Kamsar, Guinea.

Plaintiff CBG has moved for the entry of partial summary judgment, contending that there are no issues as to material fact and that the Plaintiff CBG is entitled to partial summary judgment as a matter of law. Defendant Insurance Company of North America ("INA") denies that there is coverage under the contract of insurance on the grounds that the accident involving Bucket Wheel No. 3 occurred as the result of a mechanical breakdown, which is thereby excluded under the terms and conditions of the contract of insurance. The contract of insurance involved herein insures the Plaintiff CBG against all loss resulting directly from the necessary interruption of business caused by damage to or destruction of real or personal property; but the policy does not insure against mechanical breakdown, among other things.

Plaintiff CBG's initial motion for summary judgment was based on the contention that as a matter of law the policy language excluding a mechanical breakdown was not applicable since the failure of the boom of Bucket Wheel No. 3 was the failure of a *structural* member, and a structural member cannot be subject to a *mechanical* breakdown. Both parties submitted briefs and affidavits, and argument on the motion was heard June 30, 1982. At that time the Court granted Plaintiff leave to file an amendment to the motion for partial summary judgment and permitted Defendant to file a response to the motion, as amended. Plaintiff's amendment to the motion reads as follows:

10. On the basis of these undisputed facts, it is clear as a matter of law that the "Mechanical Breakdown" exclusion provision (Paragraph 2(a) of the policy) cannot apply in this case for the following reasons:

(a) The loss claimed by the Plaintiff resulted directly from damage to personal property, namely, Bucket Wheel No. 3, sustained on March 26, 1974, including but not limited to the following particulars: the boom of Bucket Wheel No. 3 sustained a catastrophic collapse; a section of the boom buckled and was destroyed; the heavy tubular boom support posts and the cross member of the trestle of the front and back tie-rods were bowed and deformed; the connections of the front tie-rod on the boom head and on the trestle were warped and deformed; portions of the conveyor belt systems were destroyed; and electrical cables, hydraulic and central lubrication pipework, grating and railing were destroyed in the area where the boom had collapsed. Thus, any loss is covered by Paragraph 1 of the policy and the "Mechanical Breakdown" exclusion provision (paragraph 2(a) of the policy) need not be considered in this case.

The essential issue presented by this motion for partial summary judgment, as amended, centers on this Court's interpretation as a matter of law of the meaning of the enumerated exclusions to the contract of insurance, and we therefore need not address the factual issue of whether the failure of the boom of Bucket Wheel No. 3 was a mechanical breakdown, or the failure of a structural member.

## II.

■ An exception or exclusion to a policy of insurance is an affirmative defense, and the burden of proving that the exclusion is applicable is on the insurer. *Daburlos v. Commercial Insurance Co.,* 521 F.2d 18, 24 (3d Cir.1975); *Myrtil v. Hartford Fire Insurance Co.,* 510 F.Supp. 1198 (E.D.Pa. 1981); *Weiss v. CNA,* 468 F.Supp. 1291 (W.D.Pa.1979); *Kravitz v. Equitable Life*

*Assurance Society of United States,* 453 F.Supp. 381 (E.D.Pa.1978).

The relevant provisions of the contract of insurance read as follows:

## BUSINESS INTERRUPTION FORM

1. *This policy insures against:* loss resulting directly from necessary interruption of business caused by damage to or destruction of real or personal property, except finished stock, by the peril(s) insured against, during the term of this policy, on premises occupied by the insured and situated as herein described.

2. *This policy does not insure against:*

(a) Mechanical Breakdown, unless other accident covered hereunder ensues, and then this policy shall cover the ensuing loss only;

(b) Theft, conversion or infidelity by any employee of the Insured. Actual physical damage to the Insured's property as a result of a willful act of malicious intent shall be deemed not to be an act of infidelity;

(c) Inherent vice, latent defect, wear and tear, gradual deterioration, delay, loss of market;

(d) Insurrection, rebellion, revolution, civil wars, usurp of power, or action taken by governmental authority in hindering, combatting, or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade;

(e) Hostile or warlike action in time of peace or war, including action in hindering, combatting, or defending against an actual impending or expected attack;

(i) By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval or air forces, or

(ii) By military, naval or air forces, or

(iii) By an agent or such government power, authority or forces;

(f) Any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

(g) *Loss* by nuclear reaction or nuclear radiation, or radioactive contamination—all whether controlled or uncontrolled, and whether such loss be direct or indirect, approximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the perils insured against in this policy; (Emphasis added)

(h) Increase of loss resulting from:

(i) Enforcement of any local or state ordinances or law regulating the construction, repair or demolition of buildings or structures; or

(ii) Interference at the described premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the resumption or continuation of business; or

(iii) The suspension, lapse or cancellation of any lease, license, contract or order unless such suspension, lapse or cancellation results directly from the interruption of business, and then this company shall be liable for only such loss as affects the Insured's earnings during, and limited to, the period of indemnity covered under this policy. Nor shall this company be liable for any other consequential or remote loss.

(i) Any *loss* resulting from any electrical injury or disturbance to electrical appliances, devices, fixtures or wiring caused by electrical currents artificially generated unless fire ensues and, if fire does ensue, this company shall be liable only for its proportion of loss caused by such ensuing fire. (Emphasis added).

It is clear from Paragraph 1 of the business interruption form that the policy insures against *loss* resulting directly from necessary interruption of business caused by damage to or destruction of real or personal property. This is an all risk policy of insurance, which creates coverage for a wide range of losses, and coverage under an all risk policy will be allowed unless the policy of insurance contains specific provisions expressly excluding a loss from coverage. *J. Ray McDermott & Co., Inc. v. Fidelity and Casualty Company of New York,* 466 F.Supp. 353, 361 (E.D.La.1979). *See also C.H. Leavell & Co. v. Fireman's Fund Insurance Co.,* 372 F.2d 784 (9th Cir.1967);

*Essex House v. St. Paul Fire & Marine Insurance Co.,* 404 F.Supp. 978 (S.D.Ohio 1975). Further, for coverage to exist under an all risks policy, the loss must be fortuitous and not result wholly from an inherent defect in the subject matter. *Avis v. Hartford Fire Insurance Co.,* 195 S.E.2d 545, 283 N.C. 142 (1973).

▇▇▇ In interpreting the contract of insurance involved herein, we are also mindful of certain applicable principles of law. The interpretation of a contract of insurance is a question of law for the Court, and the Court cannot rewrite the policy of insurance or interpret the policy in conflict with the plain meaning of the words of the contract. The policy must be read in its entirety, and in such a manner as to avoid ambiguity and to give effect to all of its provisions. Exceptions to coverage are construed against the insurers. *Allegheny Ludlum Industries v. Lloyd's London,* 472 F.Supp. 42 (W.D.Pa.1979). *See also Aetna Casualty and Surety Co. v. Nationwide Insurance,* 471 F.Supp. 1059 (M.D.Pa.1979); *Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 326 A.2d 346 (1971). In addition, the very nature of the terms "all risks" must be given a broad and comprehensive meaning so as to cover any loss, other than a willful or fraudulent act of the insured. *Miller v. Boston Insurance Co.,* 420 Pa. 566, 218 A.2d 275 (1966).

▇▇▇ In reviewing the said exclusions contained in the business interruption policy, this Court is immediately struck by the inconsistent language of said exclusions. Only two exclusions contain language limiting *loss,* exclusion 2(g), pertaining to loss caused by nuclear reaction and nuclear radiation, and exclusion 2(i) pertaining to loss by electrical injury. By changing the language of these particular exclusions, that is, exclusions 2(g) and 2(i), the insurance company obviously manifested its intent to eliminate the "loss" requirement from the other exclusions. Thus it is clear that exclusion 2(a) does *not* refer to *"loss or damage* caused by" mechanical breakdown, but only to the mechanical breakdown or defect itself. If Plaintiff CBG had made a claim under this policy of insurance to cover the cost of replacing or repairing the boom of

Bucket Wheel No. 3, that cost would not, of course, be covered under the terms of this insurance contract. However, the contract of insurance does not in any way even attempt to limit the recovery of *losses* from the business interruption if caused by or resulting from mechanical breakdown. The policy itself insures against loss resulting directly from necessary interruption of business caused by damage to or destruction of real or personal property. In this case, there is no dispute that when the boom of Bucket Wheel No. 3 collapsed, extensive damage to both the boom and Bucket Wheel No. 3 resulted. This interruption of business stemming from the damage to Bucket Wheel No. 3 is sufficient to trigger coverage under the broad terms of the policy, and the exclusions to the broad coverage of the policy pertaining to mechanical breakdown do not further limit this broad coverage.

Paragraph 2 of the business interruption form clearly states: "This policy does not insure against . . .", and then enumerates a list of items. No mention is made of loss at any point in the exclusions until the exclusions pertaining to nuclear reaction and radiation, exclusion 2(g), and the exclusion pertaining to loss by electrical injury, 2(i). It is obvious to this Court that the insurance company clearly manifested its intent with respect to the scope of the exclusions in the language it chose in writing the exclusions. Had the insurance company intended to exclude *loss* resulting from or caused by a mechanical breakdown, it could have said so clearly and simply, either by stating: "2. This policy does not insure against business interruption losses resulting from . . ." or by stating in paragraph 2(a) "losses caused by or resulting from mechanical breakdown. . . .".

The plain meaning of the very words chosen by the insurer in this policy of insurance indicates the clear intent of the insurer to cover business interruption losses caused by damage to personal property. Once a business interruption loss results from damage to personal property, however that damage is caused, even if by a mechanical breakdown, there is coverage under the terms of the policy as the insurer has writ-

ten it. It is likewise clear from the language of the policy exclusions as they are written here, that the business interruption damage cannot include the cost of repairing the mechanical breakdown or replacing the machine. Under the policy language, whether or not there is a mechanical breakdown is immaterial once there is damage to personal property and that damage to personal property results in an interruption of business. We cannot read the policy otherwise, since an all risk policy of insurance must be given a broad and comprehensive meaning. *Miller v. Boston Insurance Co.,* supra.

A similar situation was presented in *Dickson v. United States Fidelity and Guaranty Co.,* 77 Wash.2d 785, 466 P.2d 515 (1970). There, under an all risk policy, the language of the exclusionary clauses referred to "loss or damage caused by or resulting from", with the exception of the exclusionary clause dealing with wear and tear, latent defect, gradual deterioration or mechanical breakdown, where the "loss or damage caused by or resulting from" language was absent. The *Dickson* Court held that in those circumstances the exclusion applied only to the latent defect itself, and not to the loss or damage caused by or resulting from latent defects. The *Dickson* Court stated, 466 P.2d at 518:

> In further support of the trial court's construction is our familiar rule that, as between two possible constructions, one of which would make the contract unreasonable and imprudent and the other of which would make it reasonable, fair and just, the latter interpretation will be adopted. *Dickson v. Hausman,* 68 Wash.2d 368, 413 P.2d 378 (1966); *Patterson v. Bixby,* 58 Wash.2d 454, 364 P.2d 10 (1961). This rule precludes the reading of exclusion (d) that is urged upon us by the defendant insurer. Such an interpretation would exclude any and all loss or damage caused by or resulting from wear and tear, latent defects, gradual deterioration or mechanical breakdown" even though the clear cause of the loss was a "direct loss * * * from any external cause." What loss or damage would not, at least in part, be caused by or result

from a "mechanical breakdown?" Exclusion (d), as read by the insurer, erases many obvious risks and an "all risk" policy could be thus transformed into a nearly "no risk" policy. If that is what the insurer intended, it should have said so in exclusion (d), as it did in exclusions (c), (e), (f), etc. It is more reasonable to interpret exclusion (d) as did the trial court.

In searching for applicable case law interpreting exclusionary clauses, this Court found that in every instance, in the particular contract of insurance, the language of the exclusionary clauses specifically made mention of "loss or damage caused by" in the language of the exclusion. *See, e.g., Goodman v. Fireman's Fund Insurance Co.,* 600 F.2d 1040 (4th 1979) (Exclusionary clause specifically provided policy did not insure against *"loss or damage through"* wear and tear, and gradual deterioration); *Safeco Insurance Co. of America v. Guyton,* 471 F.Supp. 1126 (C.D.Cal.1979) (Exclusions to all risk policy of insurance specifically stated the policy did not insure against *"loss caused by or resulting from"* the enumerated exclusions); *Essex House v. St. Paul Fire & Marine Insurance Co.,* 404 F.Supp. 978 (S.D.Ohio 1975) ("This rider does not insure against *loss caused by* wear and tear ... mechanical breakdown); *Connie's Construction Co., Inc. v. Continental Western Insurance Co.,* 227 N.W.2d 204 (Iowa 1975) (Policy excluded *"loss or damage due and confined to"* mechanical breakdown); *Metal Cutting Specialty Co., Inc. v. Maryland Casualty Co.,* 227 So.2d 790 (La.App.1969) (Policy excluded *"loss, damage or expense caused by or resulting from* wear and tear, mechanical or electrical breakdown or failure, inherent, vice, latent defect ..."); *Rust Tractor Company v. Consolidated Constructors, Inc.,* 526 P.2d 800 (N.M.App.1974) (Policy excluded *"loss or damage due and confined to* delay, wear and tear, rust, inherent vice, latent defect, extreme of temperature, mechanical breakdown or failure"). (Emphasis supplied).

### III.

This Court can reach no other conclusion but that had the insurance company desired

to exclude from coverage business interruption losses caused by or resulting from mechanical breakdown, it would have done so. It would have been a simple matter for the insurer to have inserted this specific language to the first sentence of paragraph 2 or at the beginning of each of the enumerated exclusions. The fact that it did not do so indicates to this Court that it did not intend to so limit the coverage under the business interruption contract of insurance. Accordingly, this Court interprets the exclusionary provisions of the contract of insurance in accordance with the plain and narrow meaning of the words chosen by the insurer. To do otherwise would eliminate the concept of risk that is inherent in all policies of insurance, and more particularly, in this "all risk policy". Therefore, it is the holding of the Court that the type of coverage provided and intended in the contract of insurance involved in the above captioned case is business interruption losses resulting from damage to real or personal property, even if the damage to real or personal property results from mechanical breakdown. Because it is not in dispute that the Bucket Wheel No. 3 was damaged as a result of the collapse of the boom, Defendant INA is barred at trial from relying on the policy exclusions enumerated at Paragraph 2. However, this Court has not addressed the question of whether the loss involved herein was the result of a fortuitous event since this issue has not been raised by the parties. This Court expresses no opinion here as to whether the event giving rise to the loss was a fortuitous event rather than the product of the inherent qualities of the property insured, but simply notes that a "fortuitous event" is a prerequisite to coverage under an all risk policy of insurance.

Plaintiff's Motion for Partial Summary Judgment based on the inapplicability of the exclusionary clauses will therefore be granted, and an appropriate Order shall be entered.

## ORDER

AND NOW, this 13th day of JANUARY, 1983, after considering Plaintiff's Motion for Partial Summary Judgment, and after hearing argument and consideration of the briefs, and for the reasons previously set forth in the accompanying Opinion, IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment on the ground that the exclusionary clauses of the contract of insurance are inapplicable in the above-captioned case, be and the same is hereby GRANTED, and Defendant is barred from relying on the enumerated exclusions at trial.